**SRAIL et al., Appellees and Cross–Appellants,**

v.

**RJF INTERNATIONAL CORPORATION, Appellant and Cross–Appellee.**

[Cite as *Srail v. RJF Internatl. Corp.* (1998), 126 Ohio App.3d 689.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72050.

Decided March 20, 1998.

692

694

*Lancione & Simon, P.L.L., Ellen S. Simon* and *Christopher Thorman*, for appellees and cross–appellants.

*Thompson Hine & Flory, L.L.P., Keith A. Ashmus, Mauritia G. Kamer* and *Brian J. Kelly*, for appellant and cross–appellee.

---

SPELLACY, Presiding Judge.

Defendant-appellant/cross-appellee RJF International Corporation ("RJF") appeals from the jury verdict in favor of plaintiffs-appellees/cross-appellants Raymond C. Srail and Richard Glover in an age discrimination lawsuit.

RJF assigns the following errors for review:

"I. The trial court erred in denying defendant's motion for judgment at [the] close of plaintiffs' case and in submitting the issue of liability to the jury because plaintiffs were unable to establish a *prima facie* case of age discrimination under Ohio law.

"II. The trial court erred in submitting the issues of front pay and compensatory damages to the jury and in entering judgment on the jury's award of front pay and compensatory damages.

"III. The trial court erred in submitting the issue of punitive damages to the jury because punitive damages are not recoverable in actions for age discrimination pursuant to Ohio Revised Code § 4112.99 and because there was no evidence of malice on the part of defendant.

"IV. The trial court erroneously instructed the jury on plaintiffs' burden of proving pretext.

"V. The trial court erred in refusing to admit evidence which showed that plaintiff Raymond Srail had a long history of resistance to supervision, change and budgetary constraints during his employment with the B.F. Goodrich Company ('BFG'), where such evidence would have shown that the decisions made with respect to Srail's employment were based on his observed attitude and history rather than stereotypes relating to age, even though the court had allowed plaintiffs to introduce evidence relating to positive aspects of Srail's employment with BFG.

"VI. The trial court erred in permitting inflammatory and prejudicial statements made by plaintiff's counsel during closing argument.

"VII. The trial court erred in denying defendant's motion for a judgment notwithstanding the verdict and/or new trial and/or for remittitur in light of the specific errors described above and the cumulative effect of those errors."

Finding RJF's appeal to lack merit, the judgment of the trial court is affirmed.

## I

In 1988, Richard J. Fasenmyer acquired most of the fabricated polymers division of B.F. Goodrich. Part of the acquired division included the Research and Development Center ("Center") located in Brecksville. Fasenmyer became the chairman of the board of the new company, which was named the RJF International Corporation. Most of the employees from B.F. Goodrich who worked in the fabricated polymers division continued on in the same positions for RJF. The employees were credited for their B.F. Goodrich service time for purposes of pension calculations. Two of the employees from the Research and Development Center who continued on from B.F. Goodrich were Raymond C. Srail and Richard A. Glover. Srail was an engineer and Glover a technologist at the facility.

In August 1994, RJF decided to close the Research and Development Center, ostensibly because the Center had not had any commercial successes from 1988

to 1994 and was considered to be too expensive to maintain for a company of RJF's size. As a whole, RJF was not in any economic distress or losing money. There was conflicting testimony as to whether the work performed at the Research and Development Center was decentralized to other plant locations. RJF still has a continued need for the technical and support work formally done by the Center, both day-to-day and long-term technical projects.

On September 16, 1994, the employees of the Research and Development Center were called together by Richard Varga, the vice-president in charge of the Center, and given a copy of a letter from Fasenmyer outlining the technical restructuring or the closure of the Center. The Center was to be closed in six months' time but that was extended later to seven months or to the end of March 1995. The Center's employees also were given a separation agreement, which set forth the benefits which RJF would extend to the Center's employees. The agreement contained a noncompetition clause that would prevent the employees from securing employment in a similar field for twelve months. In order to receive the benefits from RJF, the employees were required to release any claims that they might have had against RJF, including age discrimination claims. Srail and Glover averred that Varga told them that if they did not sign the separation agreement they probably would be dismissed. The employees were given a list of projects to be completed before closure. Srail and Glover testified that Varga stated that they would be fired if Varga did not see full effort on the projects and that if too many people left before closure, the rest would be gone. Both Srail and Glover refused to sign the separation agreement. Together they consulted with an attorney, as provided for in the agreement, in an effort to secure another position with RJF.

In the letter given to the Center's employees written by Fasenmyer, he stated that RJF would make every effort to accommodate employees who had been displaced. Within a few days of the closure announcement, Srail and Glover approached Varga about any available positions for them with RJF. They were told that nothing was available. Srail and Glover obtained permission from Varga to visit the RJF plant in Cincinnati to inquire about possible employment there. Neither man received any job offer as a result of the meeting in Cincinnati. Both Srail and Glover wished to remain employed at RJF and had an expectation that they eventually would find another position with the company.

At no time did RJF have a freeze on hiring, and the company continued to both hire and promote from within during the time period following the decision to close the Research and Development Center and the actual closure of the facility seven months later. RJF pursued an aggressive hiring program to fill a variety of engineering and technical positions.

Of the various positions that became available at RJF during this time period, none was offered to Srail or Glover. Varga did not believe that Srail and Glover could adapt to a different environment from that of the Research and Development Center. Varga did not believe that Srail and Glover had the temperament to adapt to the everyday pressures in a manufacturing environment. Varga felt that neither Srail nor Glover could handle the day-to-day stress and needs of a production facility. Varga's decision not to recommend either Srail or Glover for other positions with RJF had nothing to do with their technical skills or abilities. Srail and Glover always had received excellent evaluations. Both had the technical expertise to do the work.

At the time the Research and Development Center closed in 1995, neither Srail nor Glover had obtained another position with RJF. Glover found work six weeks later with another company for a comparable wage but without benefits. Srail never found another position and remains unemployed. Both men were born in August 1934 and were fifty-nine years of age at the time their employment with RJF terminated.

On March 10, 1995, Srail and Glover filed suit against RJF bringing claims for promissory estoppel and/or implied contract, age discrimination in violation of public policy, and statutory age discrimination in violation of R.C. Chapter 4112 and Section 626, Title 29, U.S. Code. Summary judgment was granted in favor of RJF on the causes of action for promissory estoppel/implied contract and age discrimination in violation of public policy. Trial commenced on the issue of age discrimination. The jury found for Srail and Glover on their age discrimination claim. Srail was awarded $725,000 in compensatory damages while Glover received $341,000 in compensatory damages. The jury assessed punitive damages against RJF in the amount of $500,000 for each plaintiff.

## II

In its first assignment of error, RJF contends that the trial court erred in denying RJF's motion for judgment made at the close of the plaintiffs' case. RJF asserts that Srail and Glover never established a *prima facie* case of age discrimination and, therefore, the trial court should have granted RJF's motion for directed verdict.

Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that

conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

When ruling on a motion for a directed verdict, the trial court's function in a jury trial is not to weigh the evidence but to "determine whether there is any evidence of substantial probative value in support of the nonmoving party's claim." *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 96, 24 OBR 164, 166, 493 N.E.2d 293, 295. The determination to be made is not whether one set of facts is more persuasive than another but whether only one result could be reached under the theories of law presented in the complaint. *Id.* The Civ.R. 50(A) test looks to the sufficiency of the evidence on each element of a claim to take the case to the jury. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935. The general rule is that a directed verdict is appropriate only where the party opposing the motion fails to adduce any evidence on the essential elements of his claim or defense. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896. Therefore, a motion for a directed verdict presents a question of law as opposed to a question of fact. *Id.*

The Ohio Supreme Court has held that age discrimination cases brought in state courts should be construed and decided in accordance with the federal guidelines and requirements. *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 147, 6 OBR 202, 202–203, 451 N.E.2d 807, 808–809. A plaintiff may establish a *prima facie* case of age discrimination by providing either direct evidence of discrimination or by the indirect method by following the standard established in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. That analysis requires the plaintiff to demonstrate "(1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class." *Barker, supra,* at paragraph one of the syllabus. The last requirement of the *McDonnell Douglas* analysis was rejected by the United States Supreme Court in *O'Connor v. Consol. Coin Caterers Corp.* (1996), 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433. The court held that the requirement that the plaintiff be replaced by someone under forty years of age was not an element needed to establish a *prima facie* case of age discrimination. A *prima facie* case requires evidence sufficient to create an inference that any employment decision was made based on an illegal discriminatory criterion. A more reliable indicator of age discrimination is that the plaintiff was replaced by a substantially younger employee rather than whether the plaintiff was replaced by someone outside the protected class. *Id.* However, in *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 672 N.E.2d 145, the Ohio Supreme Court once more set forth the four-part test articulated in *Barker, supra.*

If there is direct proof of discrimination, a plaintiff must set forth specific facts demonstrating improper activity "by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272, paragraph one of the syllabus. There must be a link or nexus between the discriminatory statements or conduct and the prohibited act of discrimination to establish a violation of the age discrimination statutes under the direct evidence standard. *Byrnes, supra.* Without direct proof of discrimination, the plaintiff must rely on meeting the test set forth in *Barker.*

Once a plaintiff establishes a *prima facie* case, a presumption of age discrimination is created. The burden of production then shifts to the employer to come forward with evidence of a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. If the employer articulates a nondiscriminatory reason, then the employer has successfully rebutted the presumption of discrimination created by the plaintiff's *prima facie* case. *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 263, 661 N.E.2d 796, 805. The plaintiff then must present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752, 755. The plaintiff's burden is to prove that the employer's reason was false and that discrimination was the real reason for the discharge. *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 617, 664 N.E.2d 987, 991. The ultimate burden of a plaintiff in an age discrimination action is to prove that he or she was discharged because of age. *Kohmescher, supra.*

▮ RJF first argues that Srail and Glover's only direct evidence of age discrimination was a remark attributed to Varga that was made in 1991 to the plaintiffs. Varga reportedly told Srail and Glover, "Boy, you guys are lucky. At your age, nobody can do anything to you." There must be a causal connection or link between an employer's discriminatory statements and the prohibited act of discrimination. *Byrnes, supra.* The statement made by Varga was remote in time from the decision not to hire Srail or Glover for any available positions at RJF and does not appear to relate to that decision.

▮ RJF next asserts that Srail and Glover failed to indirectly establish a *prima facie* case of age discrimination. RJF points out that neither plaintiff ever presented any evidence that he applied for the positions to which he laid claim at trial. RJF never presented this argument below. Generally, a reviewing court will not consider questions not presented to the court whose judgment is sought to be reversed. *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 679 N.E.2d 706. Because RJF never argued this point below, it will be disregarded for purposes of appeal.

██ RJF asserts that the trial court erred by submitting one of the positions to the jury that plaintiffs argued should have been offered to one of them. RJF points out that the position of Technical Manager in Cincinnati was filled by a member of the protected class. Under the four-prong test of *McDonnell Douglas,* the replacement worker must not be a member of the protected class or must be younger than forty years of age. However, the jury returned a general verdict. It cannot be discerned which of the positions challenged by Srail and Glover the jury determined should have been offered to the plaintiffs by RJF. RJF could have asked for interrogatories which would have made this issue clear but chose not to do so. Interrogatories "test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of the evidence presented at trial." *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.* (1986), 28 Ohio St.3d 333, 337, 28 OBR 400, 403, 504 N.E.2d 415, 418. Because the jury could have found Srail and Glover should have been offered one of the other job openings, the jury verdict must be upheld.

RJF also argues that Srail would not have accepted a job which did not pay at least $60,000 in salary and was located in the Cleveland area. Only one of the positions Srail laid claim to paid over $60,000 and none was in the desired geographical location. RJF's argument is specious, as Srail testified that he would be willing to relocate to either Cincinnati or Marietta and would have accepted a lower salary. The restrictions RJF relies upon were used by Srail in his search for employment outside RJF and are not applicable to positions at RJF.

RJF next maintains that the plaintiffs never established that they were qualified for any of the challenged positions. Testimony at trial was disputed on this issue. RJF offered reasons why the employees who were hired were more qualified than Srail or Glover, while the plaintiffs asserted they were capable of filling the positions. RJF admitted that Srail and Glover were technically capable, but the reasons for not considering the plaintiffs primarily consisted of the difference in the environments between the Research and Development Center and the manufacturing plants. RJF felt that Srail and Glover would be unable to adapt to the differences or handle the stress associated with a production facility. The plaintiffs presented evidence that they could have adjusted to a manufacturing position. Indeed, Glover's current job is more similar to a production facility than to research and development. Srail and Glover did present evidence at trial that they could have performed the duties required by the disputed positions. They met their *prima facie* case.

RJF's first assignment of error is overruled.

### III

In its second assignment of error, RJF contends that the trial court erred by submitting the issue of front pay and compensatory damages to the jury, in entering judgment on those issues, and by denying remittitur.

RJF first argues that the issue of front pay should not have been submitted to the jury. RJF asserts that the determination of whether an award of front pay was warranted was a decision within the province of the trial court and that the jury should not have been allowed to determine the issue. RJF never made this argument to the trial court. "An appellate court will not consider any error which a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640, 643. Because the issue was raised for the first time on appeal, this court will not address it. *Cerney v. Norfolk & W. Ry. Co.* (1995), 104 Ohio App.3d 482, 488, 662 N.E.2d 827, 830–831.

RJF next argues that the jury's award of compensatory damages was based on flawed evidence and was against the manifest weight of the evidence. RJF maintains that the bulk of the compensatory damage award consisted of front pay and other unspecified damages, neither of which is supported by the evidence. RJF asserts that the issue of front pay never should have gone to the jury for its consideration because the trial court made no determination that Srail and Glover could not be rehired by RJF. At trial and on appeal, RJF's position has been that the positions formerly held by Srail and Glover were eliminated and no longer exist. RJF also stated that neither Srail nor Glover is qualified for any position at the company. RJF's argument regarding reinstatement is specious, as RJF consistently maintained that there was no suitable employment available for either Srail or Glover. A plaintiff is presumptively entitled to reinstatement unless the employer presents evidence that reinstatement is inappropriate. *Potocnik v. Sifco Industries, Inc.* (1995), 103 Ohio App.3d 560, 660 N.E.2d 510. RJF presented just such evidence and cannot now complain of the result. It is within the trial court's discretion to determine whether reinstatement is impractical or inadequate and then whether front pay is appropriate. The jury determines the amount of front pay to be awarded. *Id.* The trial court rejected RJF's requested jury instruction on the issue of reinstatement. This reflects that the trial court did not consider reinstatement to be an option in the instant case.

RJF contends that testimony of Srail and Glover's expert witness, Dr. John Burke, was fundamentally flawed. RJF points out that Burke made several

assumptions when calculating the amount of damages to be awarded to Srail and Glover. The points RJF now raises on appeal were brought out during the cross-examination of Burke and, therefore, were considered and, apparently, rejected by the jury.

The assessment of damages is a matter within the province of the jury. *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 25 OBR 115, 495 N.E.2d 462. When reviewing a damages award, an appellate court must not reweigh the evidence and may not disturb an award of damages unless it lacks support from any competent, credible evidence. *Bemmes v. Pub. Emp. Retirement Bd.* (1995), 102 Ohio App.3d 782, 658 N.E.2d 31. Where the existence of damage is established, the evidence need only tend to show the basis for the computation of damages to a fair degree of probability. *Brewer v. Brothers* (1992), 82 Ohio App.3d 148, 611 N.E.2d 492. Only reasonable certainty as to the amount of damages is required, which is that degree of certainty of which the nature of the case admits. *Bemmes, supra.* RJF chose not to present any evidence of its own on the issue of damages. The only evidence offered on this subject was that given by Burke. A review of his testimony reveals that the evidence was competent and credible to a reasonable degree of certainty. The jury's award was supported by some competent, credible evidence and will not be overturned on appeal.

RJF further challenges the jury's award of compensatory damages by asserting that the issue of emotional distress should not have been submitted to the jury. RJF then assumes that the jury awarded each plaintiff $100,000 for pain and suffering. However, the jury's verdict on compensatory damages was general and did not specify how much was assessed for the different claims brought by Srail and Glover against RJF. RJF never requested interrogatories that would have made this distinction clear. The purpose of interrogatories is to test the correctness of a general verdict, thereby enabling the trial court to determine as a matter of law whether such verdict should stand. *Phillips v. Garfield Hts.* (1992), 85 Ohio App.3d 413, 620 N.E.2d 86. RJF could have requested such interrogatories pursuant to Civ.R. 49(B) but chose not to do so. Now it asks this court to join in a guessing game as to whether the jury actually awarded any damages for pain and suffering and, if so, what amount. This court declines to speculate concerning the specifics of the jury's award.

RJF's second assignment of error is overruled.

### IV

RJF's third assignment of error challenges the award of punitive damages. RJF first contends that punitive damages are not recoverable under R.C. 4112.99.

RJF never presented this argument below for the trial court's consideration. An appellate court need not consider any error which could have been brought to the trial court's attention at a time when the alleged error could have been avoided or corrected by the trial court. *Natl. City Bank v. Gladin* (1995), 102 Ohio App.3d 119, 656 N.E.2d 1028. RJF's statutory argument will be disregarded.

RJF argues that there is no evidence in the record that would support a finding that it acted with malice or with a conscious disregard for the rights of Srail and Glover as required for the award of punitive damages to be made. RJF submits that the evidence does not support Srail and Glover's contention that it acted with a conscious disregard for Srail and Glover.

A jury verdict as to punitive damages generally will not be over-turned unless it bears no rational relationship or is so grossly disproportionate to the amount of compensatory damages awarded that the award appears to be the result of passion or prejudice. *Davis v. Sun Refining & Marketing Co.* (1996), 109 Ohio App.3d 42, 671 N.E.2d 1049. Punitive damages are awarded for the purpose of punishing the defendant for wrongful conduct and deterring such conduct in the future. *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 660, 590 N.E.2d 737, 740–741. The determination of the amount of punitive damages is within the discretion of the trier of fact. A reviewing court should not substitute its judgment for that of the trier of fact. *Doe v. White* (1994), 97 Ohio App.3d 585, 593, 647 N.E.2d 198, 203–204.

Punitive damages may be awarded upon a finding of actual malice. "Actual malice" is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. Misconduct greater than negligence is required for an award of punitive damages. *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 575 N.E.2d 416, syllabus. . The court in *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 659 N.E.2d 1242, at syllabus, held: "Absent proof of a defendant's subjective knowledge of danger posed to another, a punitive damages claim against that defendant premised on the 'conscious disregard' theory of malice is not warranted."

The record before this court indicates that there was evidence sufficient to support an award of punitive damages. RJF officials disagreed as to whether the technical work performed by the Research and Development Center was decentralized and was still being performed at various locations at RJF. It appears that work similar to that performed by Srail and Glover during their tenure at RJF is still needed and performed at RJF. During the time period the

plaintiffs were being told that no suitable positions were available, RJF was pursuing an aggressive hiring campaign for technical and engineering positions. Srail and Glover were never told by RJF that any of the positions challenged at trial were open so that they could at least apply. The plaintiffs demonstrated that they were technically competent, and RJF did not disagree with this assessment, yet still maintained that Srail and Glover were not qualified or capable of performing any job at RJF.

Further, the circumstances under which RJF discharged the plaintiffs offer more support for an award of punitive damages. The Research and Development Center was closed because it was not profitable for RJF, yet the Center's employees were given a number of projects to complete before closure. If the employees did not put forth their full efforts on those projects, they were threatened with immediate termination.

RJF conditioned the receipt of any benefits related to the closure on the employees' agreeing to give up any legally cognizable claim that they may have had against RJF, including any for age discrimination. The court in *Potocnik v. Sifco Industries, Inc.* (1995), 103 Ohio App.3d 560, 660 N.E.2d 510, upheld an award of punitive damages where the employer consciously disregarded the employee's rights and knew its actions would cause substantial harm to the employee. There was evidence that the employer purposefully discharged the employee because of his handicap. In the instant case, there was evidence that RJF was aware that it was violating the age discrimination statute. It can be inferred that RJF attempted to force the plaintiffs to give up any age discrimination claim against RJF by signing the release. Srail and Glover also maintained that the possibility of termination was raised if they did not sign the separation agreement.

There was sufficient evidence to support the jury's award of punitive damages. The trial court did not err by submitting the issue to the jury.

RJF's third assignment of error is overruled.

## V

RJF's fourth assignment of error contends that the trial court erroneously instructed the jury on the issue of the plaintiffs' burden of proving pretext. Specifically, RJF objects to the following portion of the jury charge:

"So, in order to determine that a defendant stated reasons or reasons under a pretext, you may consider whether each plaintiff showed that the defendant's reasons are unworthy of belief or that the defendant's reasons are not the true reasons for not transferring, retaining, or hiring, transferring, retaining, them into these available positions, or that even if the defendant's reasons are

believable, that the age of each of the plaintiffs was, nonetheless, one of the reasons he was not transferred, retained, or hired into an available position."

RJF argues that this portion of the jury instructions does not comply with the standard set forth in *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407. In *Hicks,* the court stated that "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (Emphasis *sic.*) *Id.* at 515, 113 S.Ct. at 2752, 125 L.Ed.2d at 422. RJF's position is that the trial court's instruction lowered Srail and Glover's burden in proving pretext.

 A charge to the jury should be a plain and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced. *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 10, 482 N.E.2d 583, 585. It is well established that a trial court should confine its instructions to the issues raised by the pleadings and the evidence. *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 170–171. When reviewing such an assignment of error, a single challenged jury instruction may not be reviewed piecemeal or in isolation but must be viewed within the context of the entire charge. *Fischer v. Dairy Mart Convenience Stores* (1991), 77 Ohio App.3d 543, 602 N.E.2d 1204.

 In reviewing the entire instruction, the trial court clearly informed the jury that it must find that RJF discriminated against Srail and Glover on the basis of age by not transferring, retaining, or hiring them into other available positions. The trial court instructed the jury several times that the plaintiffs had to establish that the reason RJF gave for not offering them a position was pretext or coverup for what was a purpose to discriminate on the basis of age.

After considering the entire instructions given to the jury by the trial court, it is apparent that the dictates of *Hicks* were complied with in the charge. No reversible error is present in the jury instructions.

RJF's fourth assignment of error is overruled.

## VI

In its fifth assignment of error, RJF asserts that the trial court abused its discretion by refusing to admit evidence pertaining to Srail prior to 1988. RJF contends that the evidence would have shown that Srail had a long history of resistance to supervision, change, and budgetary limitations dating back to his employment with B.F. Goodrich. It is RJF's position that the excluded evidence would have assisted RJF in proving that it had a legitimate, nondiscriminatory reason for not placing Srail in a manufacturing or production position.

A trial court's ruling that certain evidence will be admitted or excluded from trial will not be reversed absent a showing of a clear and prejudicial abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. An abuse of discretion involves more than an error in judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

The trial court refused to allow into evidence any documents from B.F. Goodrich. RJF was permitted to question Srail about his philosophy regarding research and development versus technical or scientific work. RJF did cross-examine Srail about his 1979 job evaluation and what was written on the document. The evidence about Srail's long-term attitude toward management, manufacturing or technical work, and working within budgetary constraints was brought out at trial through testimony of various witness. RJF was not harmed in any significant way by the trial court's ruling excluding the B.F. Goodrich documents. There was no abuse of discretion by the trial court in its evidentiary ruling.

RJF's fifth assignment of error is overruled.

## VII

In its sixth assignment of error, RJF submits that the plain error doctrine is applicable in the instant case with regard to the closing argument of plaintiffs' counsel. RJF asserts that the trial court's denial of RJF's motion for a new trial with respect to the closing argument was plain error because the argument had a substantial adverse impact on the integrity of and public confidence in judicial proceedings.

The failure to object to any alleged misconduct of opposing counsel during closing argument waives any error associated with the alleged misconduct. *Jones v. Olcese* (1991), 75 Ohio App.3d 34, 598 N.E.2d 853. Although RJF attempts to overcome its failure to object to the remarks by invoking the plain error doctrine, a review of the record does not indicate that the application of that doctrine is appropriate. The plain error doctrine is not favored. It should be applied only "in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus. The instant case is hardly that rare case to which the plain error doctrine is applicable.

RJF's sixth assignment of error is meritless.

## VIII

In its seventh assignment of error, RJF argues that the trial court erred by denying its motion for judgment notwithstanding the verdict and/or new trial and/or remittitur. RJF contends that it was substantially prejudiced by numerous errors that occurred at trial and that the trial court should have granted its motion due to the totality of errors which resulted in injustice to RJF.

A trial court is afforded wide discretion when ruling on a Civ.R. 50 motion for a new trial and will be reversed only upon a showing that the trial court abused that discretion. *Whitenight v. Dominique* (1995), 102 Ohio App.3d 769, 658 N.E.2d 23.. An appellate court's review of a denial of a motion for a new trial is severely circumscribed. *Kluss v. Alcan Aluminum Corp.* (1995), 106 Ohio App.3d 528, 666 N.E.2d 603. A reviewing court must view the evidence most favorably to the trial court's action as opposed to the verdict of the jury. *Fischer v. Dairy Mart Convenience Stores* (1991), 77 Ohio App.3d 543, 602 N.E.2d 1204.

In *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338, the court stated:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." (Citations omitted.)

Although the court reviews and considers the evidence, a motion for judgment notwithstanding the verdict is a question of law not of fact. A reviewing court must construe the evidence most strongly in favor of the nonmoving party, in addition to assuming the truth of all evidence in support of that party's claims. *Whitenight, supra.*

The errors raised in RJF's motion essentially were the same as have been raised on appeal. It already has been determined that RJF was not prejudiced by the court's rulings made at trial. There was no error made at trial that would have warranted a new trial or judgment notwithstanding the verdict. The trial court did not abuse its discretion by denying RJF these remedies or in not granting remittitur, especially to a nominal sum as requested by RJF.

RJF's seventh assignment of error lacks merit.

## IX

In their cross-appeal, Srail and Glover present the following assignment of error:

"The trial court erred when it granted summary judgment of plaintiffs' implied employment/promissory estoppel claim."

Finding the appeal to lack merit, we affirm the judgment of the trial court.

Srail and Glover contend that summary judgment should not have been granted on their claim for implied employment contract/promissory estoppel. They contend that RJF made written and oral assurances to Srail and Glover that their jobs were secure and, that due to these promises, Srail and Glover did not pursue other career opportunities.

This cause of action was decided by summary judgment. Civ.R. 56(C) provides that summary judgment is proper if the trial court determines that "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615. Summary judgment is not appropriate where the facts are subject to reasonable dispute when viewed in a light favorable to the nonmoving party. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 104, 19 OBR 261, 264–265, 483 N.E.2d 150, 154. The moving party is entitled to summary judgment if the nonmoving party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273.

In *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, the court recognized that an employment-at-will agreement could be transformed into an implied contract for a definite term. The *Mers* court held at paragraph two of the syllabus:

"The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge."

■ However, a strong presumption exists against such inflexible arrangements. *Henkel v. Educational Research Council of Am.* (1976), 45 Ohio St.2d 249, 255–257, 74 O.O.2d 415, 418–420, 344 N.E.2d 118, 121–123. The terms of the agreement or the circumstances must manifest the parties' mutual intent to bind each other to overcome this presumption. *Id.*

■ Generally, in the absence of a written employment contract that states the term of duration, the employment relationship is terminable at will by either the employer or the employee. See *Henkel, supra,* at 255, 74 O.O.2d at 418–419, 344 N.E.2d at 121–122. Promissory estoppel can be an exception to the rule that an employee can be terminated at will in an oral employment agreement.

■ "The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers, supra,* at paragraph three of the syllabus.

■ For promissory estoppel to apply, the employee must point to some representation by the employer that may be reasonably interpreted as limiting the employer's ability to terminate the employee at will. *Penwell v. Amherst Hosp.* (1992), 84 Ohio App.3d 16, 616 N.E.2d 254. Specific promises of job security must be clear and unambiguous. *Shaw v. J. Pollock Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295. Additionally, an employee must show that he detrimentally changed his position in reliance on the employer's representation. *Gargasz v. Nordson Corp.* (1991), 68 Ohio App.3d 149, 153, 587 N.E.2d 475, 477. The employee's reliance is reasonable if the employer should have expected the employee to base his actions or forbearance on the employer's promise. *Mers, supra,* 19 Ohio St.3d at 105, 19 OBR at 265–266, 483 N.E.2d at 154–155.

■ Srail and Glover rely on certain representations made by Fasenmyer, chairman of the board of RJF, to support their argument that material issues of fact remain on their claim of implied contract and/or promissory estoppel. Srail and Glover point to a letter written by Fasenmyer in 1988, soon after he purchased the company from B.F. Goodrich, in which Fasenmyer wrote that if the employees worked hard and were successful, they would be presented with unbelievable opportunities for professional growth, promotion, and security. Fasenmyer also met with the employees at the Research and Development Center and, in the course of the conversation, stated that he considered the employees to be his family and expected them eventually to participate in the ownership of RJF. Srail and Glover also argue that the company policy of not terminating employees without a valid reason led to an implied contract of

continued employment. Srail and Glover state that they relied on RJF's promises that they would receive high consideration for available positions once the closing of the Research and Development Center was announced and that they stayed on with RJF because of those assurances.

None of the evidence Srail and Glover rely on in support of their contention that summary judgment was erroneously granted is sufficient to show that either an implied contract of continued employment existed or that the elements of promissory estoppel were met. There was no statement of employment for a definite term. There is no evidence of any mutual intent to bind the parties to continued employment. Srail and Glover certainly have not overcome the strong presumption that their employment arrangement with RJF was at will.

The evidence also does not support a claim for promissory estoppel. There were no clear assurances of job security to either Srail or Glover present in any of the statements made by Fasenmyer. Rather, his statements were general and vague in nature. The company policy of not terminating employees without a valid reason does not apply to a situation where a division of a company is closed. Further, Srail and Glover never provided evidence of any instances in which they refused a specific employment opportunity because of promises by RJF that they apparently would have perpetual employment. There is not enough evidence to create a material issue of disputed fact showing detrimental reliance on the part of either Srail or Glover. The trial court did not err in granting RJF's motion for summary judgment.

Srail and Glover's assignment of error lacks merit.

*Judgment affirmed.*

ROCCO and JAMES D. SWEENEY, JJ., concur.