JOURNAL ENTRY AND OPINION
Appellants Miervaldis and Patricia Lulaks appeal from a jury verdict against them wherein compensatory and punitive damages and attorney fees were awarded to appellees Stefan and Melissa Powell on a claim for fraud in the sale of real estate. The Lulakses claim the Powells failed to introduce sufficient evidence on every element of fraud and Judge Eileen Gallagher erred when she denied their motion for directed verdict and permitted prejudicial testimony to influence the jury. We disagree and affirm.
On January 31, 1995, the Powells entered into a contract with the Lulakses to purchase the Lulakses' home located at 23840 Ambour Drive, North Olmsted, Ohio. Prior to the sale, the Lulakses had executed and given to the Powells a copy of the Residential Property Disclosure Form required under R.C. 5302.30 that indicated they were not aware of any material defects in the property including: (1) cracks or other material problems with the home's foundation or interior or exterior walls; (2) any current leaks or problems with the roof, or any leaks or problems with regard to the roof that were corrected within the past five years; and (3) the presence of any wood boring insects, or any damage resulting from their presence.
After receiving this form but prior to the sale, the Powells discovered a roofing problem that required repair to the flashing around the chimney. Miervaldis Lulaks told the Powells that he would repair the problem. Lulaks told the Powells this was the only roof repair that had been made, and that to his knowledge the roof did not leak.
After moving into the premises on March 24, 1995, the Powells began to notice problems. The first was the discovery of carpenter ants, a wood boring insect whose presence was not mentioned on the disclosure form. Mrs. Powell testified that in May or June of 1995, thousands of ants came out of the woodwork and infested the home and she paid exterminators $736 to eradicate them. The Powells' neighbors then advised them about a large crack in the four-foot high brick veneer in the front of the home. Lulaks had covered a portion of the brick with vinyl siding and had planted a bush covering that portion of the crack that extended below the siding to the ground. In addition, when winter came, the Powells noticed moisture seeping from the walls and ceilings on the east and west walls of the house.
The Powells contacted Marko Vovk, a pre-purchase home inspector, who visited the home in January 1996. Vovk testified that he discovered several layers of shingles on the west side of the roof, and stated that the top layer of shingles appeared new. At trial Lulaks admitted that he had paid for roof repairs around his chimney (which is on the east side of the roof) in 1993, and for those made just prior to the sale of the house. Inspection revealed extensive moisture damage, including rotted wood, in both the east and west walls of the house.
The Powells testified that Mr. Powell, with the assistance of a few of his friends, replaced the entire roof, replaced the boards that had become rotten due to water damage, and repainted the water damaged ceilings and walls of the home. In total, the Powells presented invoices for the materials and the costs of the repairs in the amount of $1,486.30.
Vovk testified that part of the crack in the brick veneer wall behind the vinyl siding applied by Lulaks corresponded to a crack in a crawl space on the other side of the wall, and that the brick veneer wall rested on the foundation of the house. Vovk testified as follows:
Q. And what did you observe in the crawl space?
 A. The crawl space was a masonary [sic] structure that was on the east side of the dwelling. It was a shallow crawl space and I noticed the crack — there was a large crack going through the masonary [sic] which would have been at the same location, roughly the same location as the brick veneer crack.
 The brick actually sits on the foundation so if the foundation fails then the brick will fail. So it was the same thing, just two different locations.
Vovk also testified that he observed nail pops that indicated settling, and stated he recommended that the Powells excavate to determine if the foundation beneath the cracked wall needed repair.
Anthony Artino, a construction contractor, testified that he came to the Powells' home to assess the cost of repair. Artino observed the crack in the wall, stating that it [s]tarted at the bottom and got wide enough to stick your hand in at the top. Artino testified that the brick veneer wall was not level, because a part of the wall was sagging. Artino stated that he could tell from his observations that the footer below the wall was inadequate. Artino also testified that he noticed a sway in the roof on the east side of the house. Artino estimated the cost to repair the damage at approximately $13,450.00, stating that:
 To perform this work and do it properly you would be incurring $1,850 for excavation, $2,600 for pouring wall construction, similar to basement walls, $3,800 to structurally support the east side of the house and porch before any excavation can be performed.
Finally, Artino testified that it would cost $5,200 to replace the front wall after putting a footer underneath.
Lulaks admitted that he put siding on the wall over the crack and planted a bush in front of it in November 1994, approximately three weeks prior to placing his home on the market and shortly before the Powells first looked at the property. William Lowery, a neighbor across the street, testified that he observed attempts to patch the crack with tar prior to it being covered with the siding.
Lulaks testified that he did not note the crack's existence on the disclosure form because he believed it was a minor flaw and not significant because the wall was a facade wall, and therefore did not affect the structural stability of the house. He stated that he covered up the crack for aesthetic reasons only. He also admitted that he did not disclose the 1993 repairs on the chimney because he did not think it necessary as the problem had been solved. Lulaks denied making any other repairs or adding or replacing shingles to the roof at any time since he moved into the house in 1983.
On October 13, 1996, the Powells filed a complaint against the Lulakses alleging that their failure to disclose latent defects concerning the home's condition amounted to fraud and fraudulent concealment. A jury trial commenced on October 22, 1998. The Lulakses moved for directed verdict after the closing of the Powells' case, and again at the close of all evidence. Both motions were denied.
On October 26, 1998, the jury returned a verdict in favor of the Powells and awarded $15,386 in compensatory damages, $10,000 in punitive damages, and recommended that the Powells receive reasonable attorney fees. The Lulakses filed motions for a new trial and for judgment notwithstanding the verdict. The Powells submitted evidence and requested $15,000 in attorney fees.
On November 23, 1998, Judge denied the Lulakses' motions for a new trial and judgment notwithstanding the verdict, and awarded the Powells an additional $15,000 in attorney fees.
The Lulakses' first assignment of error states:
 I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANTS' MOTIONS FOR DIRECTED VERDICT, FOR THE REASON THAT PLAINTIFFS-APPELLEES FAILED TO INTRODUCE AT TRIAL SUFFICIENT EVIDENCE ON EACH AND EVERY ELEMENT OF THEIR CLAIMS OF FRAUD.
The scope of our review is stated in Srail v. RJF Internatl. Corp. (1998), 126 Ohio App.3d 689, 698, 711 N.E.2d 264, 270 as follows:
 When ruling on a motion for a directed verdict, the trial court's function in a jury trial is not to weigh the evidence but to "determine whether there is any evidence of substantial probative value in support of the nonmoving party's claim." Eldridge v. Firestone Tire 
Rubber Co. (1985), 24 Ohio App.3d 94, 96, 24 OBR 164, 166, 493 N.E.2d 293, 295. The determination to be made is not whether one set of facts is more persuasive than another but whether only one result could be reached under the theories of law presented in the complaint.
 Id. The Civ.R. 50(A) test looks to the sufficiency of the evidence on each element of a claim to take the case to the jury. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935. The general rule is that a directed verdict is appropriate only where the party opposing the motion fails to adduce any evidence on the essential elements of his claim or defense. O'Day v. Webb (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896. Therefore, a motion for a directed verdict presents a question of law as opposed to a question of fact. Id.
A claim of common-law fraud requires proof of the following elements:
 (a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 (d) with the intent of misleading another into relying upon it,
 (e) justifiable reliance upon the representation or concealment, and
 (f) a resulting injury proximately caused by the reliance. Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
Lulaks filled out a disclosure form stating that he knew of no material cracks in the exterior walls of the home, and that he had done no roof repairs within the last five years, excluding the chimney flashing repairs done just prior to the sale. He was aware of the crack in the front wall, and the jury could conclude that he attempted to conceal it because he knew that it would raise serious questions about the building's foundation. Lulaks admitted that he did not disclose the 1993 chimney flashing repair, and the jury also could conclude that he failed to disclose evident repairs to the west side of the roof. Again, the jury could conclude that Lulaks did not disclose these repairs because it would raise questions concerning the integrity of the roof. Both the chimney flashing and the multiple layers of shingles on the west side indicated repeated problems in the same areas, and the jury could conclude that Lulaks was aware of ongoing leakage on both sides of the house.
When offering residential real estate for sale, the disclosure of material defects attendant thereto is required by R.C. 5302.30, and the Powells were justified in relying on Lulaks' denials of problems and/or repairs. They testified that they relied on the Lulakses' statements, and did not hire anyone to do an independent pre-purchase home inspection.
The Lulakses' primary contention is that the Powells did not show a causal link between the defects concealed and the damages claimed. Despite substantial evidence showing that defects were concealed, they argue that the Powells failed to prove their damages were attributable to those defects. They submit that proof of a crack in a brick veneer wall is not evidence of a structural defect, and that Artino's repair estimate cannot be causally linked to the crack without expert testimony linking the crack to a foundation problem. Similarly, the Lulakses argue that the Powells presented no evidence of any defect in the roof, and thus did not show that the water damage in the walls was causally related to such a defect.
While it is true the Lulakses successfully challenged Vovk's qualifications and precluded his opinions on foundation damage, and excluded Artino's written estimate of the cost of repair, we find that the jury had sufficient evidence to award damages to the Powells. Contrary to the Lulakses' contentions, we need not find that the brick veneer wall was itself a vital part of the structure; the fact that it was cracked was a warning sign that other, more serious problems existed, especially settling or foundational distress. Vovk testified he recommended that the Powells excavate to determine the soundness of the structural footer beneath the wall. The evidence was sufficient to allow the jury to infer that the crack was probably symptomatic of a more serious condition that needed to be analyzed and addressed. The Lulakses' concealment of the crack prevented the Powells from assessing its significance prior to buying the house.
Artino's testimony supplemented that of Vovk, because he testified that the wall was way out of level and that he noticed a sway in the roof. From these observations, Artino determined that he would have to replace not only the wall, but the footer beneath it as well. Artino also determined that he would need to support the east side of the house before doing the repairs on the front. From the testimony of Vovk and Artino, the jury reasonably could conclude that Artino's estimate was a reasonable assessment of the work that needed to be done to ensure the structural stability of the house, and that the concealment of the crack in the wall effectively concealed the need for these invasive repairs.
The jury could reasonably find that the Lulakses concealed more than a cracked wall but instead concealed the existence of much more extensive damage. Artino's damage estimate was reasonably related to the existence of a foundation problem hidden from the Powells by the siding and the shrub.
The Lulakses also contend that there was no evidence of roof defects, or the causal relationship between the Powells' repairs and such defects. The evidence showed that the Lulakses had painted over cracks and discolorations on the inside walls that did not reappear until the next winter. The jury could conclude that the Lulakses were aware of both the roof problems and wall damage and did not disclose repeated repairs to prevent the Powells from considering or investigating the existence of a chronic problem. The jury reasonably could conclude that repeated roof repairs were the result of on-going leaks, and could infer that the result of repeated leaks was water damage to ceilings, walls and wood. Thus the jury could reasonably conclude that the water damage repairs were proximately caused by the Lulakses' fraudulent concealment of defects in the roof.
The Lulakses are correct that there was no evidence showing they were aware of or concealed the presence of carpenter ants, but fail to prove that the Powells' $736 extermination bill was included in the compensatory damage award. The Powells requested $1,486 for the roof and wall materials, and approximately $13,450 to repair the crack in the front wall and related damage. Artino also testified that his estimate was subject to a 4% yearly increase for inflation. The jury delivered a general verdict, and the Lulakses did not request interrogatories concerning the apportionment of damages. Because there is no direct evidence that the exterminator charges were included in the jury award, and because the award was reasonable without its inclusion, the damages awarded were warranted and appropriate under the circumstances. The first assignment of error is without merit.
The second assignment of error states:
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE HARM OF THE PLAINTIFFS-APPELLANTS' OBJECTION TO AN INACCURATE QUESTION BY PLAINTIFFS-APPELLEES (SIC) COUNSEL WHICH UNFAIRLY PREJUDICED THE JURY AGAINST DEFENDANTS-APPELLANTS.
The Lulakses argue that the jury was prejudiced against them when the Powells' attorney asked Lulaks whether he would be surprised to learn that an engineer had determined the cracked wall was in fact a structural wall. They maintain that this was prejudicial error because the Powells did not present such evidence, and the jury thus was unfairly led to believe that the wall was a structural wall rather than a facade wall.
The scope of cross-examination of a witness is in the sound discretion of the judge, and the judge's ruling will not be disturbed on appeal absent a clear and prejudicial abuse of discretion. Berlinger v. Mt. Sinai Medical Ctr. (1990), 68 Ohio App.3d 830,838, 589 N.E.2d 1378, 1383, citing O'Brien v. Angley (1980), 63 Ohio St.2d 159, 407 N.E.2d 490. An abuse of discretion occurs when the court's attitude is found to be arbitrary, unreasonable or unconscionable. Srail v. RJF Internatl. Corp. (1998), 126 Ohio App.3d at 706, 711 N.E.2d at 275.
The Powells' expert, Vovk, who had a bachelor's degree in civil engineering, did not testify the cracked wall was a structural wall, but we find no prejudice from the question posed to Lulaks. Vovk referred to the wall on more than one occasion as a veneer wall; this characterization is similar to Lulaks' description of a facade wall, but both indicated that the wall in question did not support the structure of the house. The Powells' lawyer's reference to a structural wall erroneously indicated that the brick veneer was a support wall, but Vovk referred to the wall as a veneer. Contrary to the Lulakses' contention, Vovk's testimony was not based on a belief that the brick veneer was a support wall, but on his observation that the wall rested on the foundation. Based upon that fact, the cracked wall was suggestive of a more serious foundational problem that Vovk believed should be investigated. This theory was clearly presented to the jury, and alleviated any prejudice due to confusion in the lawyer's use of terms. The second assignment of error is not well taken.
It is ordered that the appellees recover from the appellants their costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________ ANNE L. KILBANE, JUDGE
ANN DYKE, ADMINISTRATIVE JUDGE CONCUR; MICHAEL J. CORRIGAN, J., CONCURRING IN JUDGMENT ONLY.