DECISION.
{¶ 1} Defendant-appellant/cross-appellee, Ruth Ludwig, appeals the judgment of the Hamilton County Court of Common Pleas in favor of plaintiffs-appellees/cross-appellants, Robert Gay, Florence Giaccio, Theodore Gay, and Richard Gay ("appellees") in a suit alleging intentional interference with an inheritance and breach of fiduciary duty. The appellees have also appealed the judgment, arguing that the damages that the trial court awarded were inadequate. For the following reasons, we affirm the trial court's judgment.
{¶ 2} In 1993, the decedent, Elmer Gehr, executed a will that in substance left his entire estate to his nieces and nephews, to be divided equally. Gehr named Ludwig, one of his nieces, as the executrix of the estate.
{¶ 3} As Gehr's health declined, he became more dependent upon the aid of Ludwig. Over a several-year period before his death, Ludwig helped Gehr with his household chores and became increasingly involved in assisting him with his finances. During the period that Ludwig was assisting Gehr, he converted his bank account and his investment account into joint accounts with Ludwig. Ludwig thereafter received more than 450 checks in the total amount of approximately $212,000. Of those checks, Ludiwg wrote 357 and submitted them to Gehr for his signature.
{¶ 4} Also during this period, Ludwig had her own lawyer prepare a power-of-attorney that in essence gave her control over Gehr's financial and personal decisions. Ludwig took the power-of-attorney form to her personal banker, Linda Merwin, for notarization, even though both Ludwig and Merwin conceded that Merwin had not witnessed Gehr's signature and had no knowledge that the signature was authentic.
{¶ 5} In 1999, Ludwig used the power-of-attorney to admit Gehr into a nursing home. At the same time, she used the power-of-attorney to transfer to herself approximately $650,000 worth of Gehr's stock. To facilitate the transfer of the stock, Ludwig had Merwin guarantee the stock-transfer documents, even though Merwin again could not verify the legitimacy of Gehr's signatures. Ludwig also had Merwin notarize a "statement of intent" that purportedly confirmed Gehr's intent to transfer the stock.
{¶ 6} Gehr died in October 2000. Upon learning that Ludwig had essentially emptied the estate through the stock transfers and other transactions, the appellees, four of the persons who were named as heirs in the will, filed suit against Ludwig.
{¶ 7} The case proceeded to a bench trial. At trial, the appellees presented evidence that Gehr had suffered periods of disorientation and lethargy at the time of the stock transfers. But Ludwig presented evidence that Gehr had remained mentally alert and that, due to his special regard for her, he had intended for her to receive the lion's share of his property.
{¶ 8} After the trial, the court entered judgment in favor of the appellees in the amount of the value of the stocks as of the date of death, as well as interest, attorney fees in the amount of $51,701, and punitive damages of $100. The trial court's entry specified that the damages were to be paid to Gehr's estate, although the award of attorney fees was made to the appellees themselves. Ludwig was not ordered to repay the money that she had received from the joint accounts.
{¶ 9} In her first assignment of error, Ludwig now asserts that the trial court erred by failing to recognize that the appellees bore the ultimate burden of proving undue influence. We find no merit in the assignment.
{¶ 10} A general, durable power-of-attorney does not authorize an attorney-in-fact to transfer the principal's property to herself or to others unless the power-of-attorney explicitly confers that power.[1] An attorney-in-fact may not make gratuituous transfers of the principal's assets unless the power-of-attorney expressly and unambigously grants the authority to do so.[2]
{¶ 11} In this case, the durable power-of-attorney did not expressly give Ludwig the authority to make gifts to herself or to others. The only explicit right conferred upon Ludwig with respect to gifts was the authority to "continue a pattern of annual gifts established by [Gehr] over the past years," and there was no evidence that the transfers of stock to Ludwig fell within the purview of that clause. The transfers of stock were, therefore, invalid.
{¶ 12} Nonetheless, because the parties tried the case upon the assumption that the power-of-attorney did grant Ludwig the right to make gratuitous transfers, and because they have argued the case on appeal upon that same assumption, we address the assignments of error as argued. Even assuming that the power-of-attorney granted Ludwig the explicit authority to transfer the stock to herself, we find no error in the trial court's judgment.
{¶ 13} Where a confidential or fiduciary relationship exists between the donor and the donee, there is a suspicion that undue influence may have been exerted on the donor.[3] In such a case, a presumption arises that the transfer was unauthorized, and the donee bears the burden of going forward with evidence that the transfer was valid, while the party contesting the gift retains the ultimate burden of proving undue influence by clear and convincing evidence.[4] This rule applies even where a power-of-attorney gives the attorney-in-fact the authority to make gifts to herself.[5]
{¶ 14} In this case, we are not persuaded that the trial court misapplied the burdens of proof. Although the court, in its findings of fact and conlusions of law, stated that Ludwig had failed to produce "clear and convincing" evidence of the validity of the transfers, it was merely clarifying the standard of proof in undue-influence cases. It is apparent from the entirety of the court's conclusions, and the manner in which the trial was conducted, that the trial court assigned the burden of persuasion to the appellees. The first assignment of error is overruled.
{¶ 15} In her second assignment of error, Ludwig contends that the trial court's judgment was against the manifest weight of the evidence. Judgments supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as being against the manifest weight of the evidence.[6] We must indulge every reasonable presumption in favor of the trial court's judgment and its underlying findings of fact.[7]
{¶ 16} Here, we cannot say the the trial court's judgment was against the manifest weight of the evidence. First, we again note that, under the assumptions made by the parties concerning the import of the power-of-attorney, Ludwig had the burden of going forward with evidence of the validity of the transfers. Because the trial court is vested with the discretion to believe or disbelieve any piece of evidence,[8] the court was justified in its finding that Ludwig had failed to meet her initial burden. Though she asserted that Gehr was mentally competent and that his special regard for her prompted him to give her the property, the trial court was not required to find that evidence to be credible. In other words, we are not convinced that Ludwig, as a matter of law, carried her burden of production.
{¶ 17} Moreover, even were we to assume, as Ludwig does in her brief, that she had met that initial burden, we would find no error in the trial court's judgment. The appellees produced evidence that Ludwig had convinced Merwin to verify Gehr's signature on the power-of-attorney and the stock transfers when Merwin could not truthfully do so. Ludwig argues that the power-of-attorney was not required to be notarized, but she concedes that the stock transfers required signature guarantees. Regardless of the formal requirements, Ludwig's method of obtaining the verification of the signatures on the power-of-attorney, on the stock transfers and on the "statement of intent" — and thereby attempting to give them legitimacy — was certainly suspect.
{¶ 18} The appellees also presented evidence that Ludwig had used the power-of-attorney to take virtually all of Gehr's property, even though his will stated his intention that the nieces and nephews would share equally. There was no evidence that Gehr had indicated to any other person his intent to transfer the stock. Although Ludwig claims that the gift-tax returns signed by Gehr were evidence that he had ratified the gifts, only Ludwig witnessed the signing of the returns, thus calling into question Gehr's knowledge of the specifics of the transactions and therefore the validity of the asserted ratification.
{¶ 19} Finally, the trial court was presented with evidence that Gehr's mental functioning had deterioriated, and we find no error in the trial court's conclusion that Gehr was susceptible to undue influence because of his infirmity. In sum, the trial court's judgment was supported by some credible, competent evidence of undue influence. The judgment was not against the weight of the evidence, and the second assignment of error is overruled.
{¶ 20} In her third and final assignment of error, Ludwig argues that the court erred in awarding damages in favor of the estate when the estate had not been made a party to the litigation. We find no error in the judgment. As the appellees correctly state, named heirs may bring a claim against an executrix where the executrix has improperly failed to assert a claim or is involved in wrongdoing.[9] Here, the evidence indicated that the estate as a whole had been harmed by Ludwig's misdeeds. The trial court ordered that the damages be paid to the estate and thereby established a constructive trust for the numerous heirs who were not parties to the litigation.
{¶ 21} Furthermore, Ludwig can claim no prejudice as a result of the judgment being rendered in favor of the estate. She suggests that she should have been ordered to pay damages only in proportion to the named plaintiffs' shares of the estate, but we find no merit in that argument. Ludwig can claim no valid interest in property that was improperly appropriated from the estate and can therefore assert no claim that the court erroneously ordered her to disgorge the ill-gotten property. Finally, Ludwig had signed a joint stipulation withdrawing the appellees' motion to amend the complaint to include the estate and thereby waived any argument that the estate was incorrectly omitted from the suit. The third assignment of error is overruled.
{¶ 22} We turn now to the cross-appeal. In their first assignment of error, the appellees claim that the trial court erred in valuing the stock on the date of Gehr's death rather than on the date of the transfer to Ludwig. They argue that the court's choice of the former date improperly deprived the estate of assets because the stocks had depreciated in value from the date of transfer to the date of death. Similarly, they argue that the calculation of prejudgment interest should have been based upon the date of transfer.
{¶ 23} We find no error in the trial court's decision. The appellees' argument is predicated upon the assumption that, had Gehr retained possession of the stocks, he would have sold them when they began to depreciate. We agree with Ludwig that such an argument is simply too speculative. The appellees presented no evidence concerning what Gehr would have done with the stocks had he retained them, and the trial court could not have accurately calculated when, or if, he would have sold the depreciating stocks.
{¶ 24} The appellees cite several cases involving conversion for the proposition that the date of conversion should also be the date of valuation.[10] But this was not a case of simple conversion. Here, the prospective heirs could assert no claim with regard to the property until the decedent's death. Under these circumstances, the court was justified in valuing the stocks on the date of death, and we overrule the appellees' first assignment of error.
{¶ 25} In their second and final assignment of error, the appellees claim that the trial court erred in calculating punitive damages. They argue that, in light of the compensatory damages of nearly $600,000, the award of $100 in punitive damages was inadequate. Ludwig argues that, when considered in conjunction with the attorney-fee award of $51,701, the punitive-damage award cannot be characterized as an abuse of discretion.
{¶ 26} Punitive damages are awarded to punish the defendant for wrongful conduct and to deter tortious conduct by others.[11] The determination of the amount of punitive damages is within the discretion of the trier of fact, and an appellate court should not substitute its decision for that of the trier of fact.[12] A trial court generally may not award attorney fees in a tort action unless punitive damages have also been awarded.[13]
{¶ 27} In the case at bar, we find no abuse of discretion in the trial court's award of $100 in punitive damages. Although we are mindful of the appellees' argument that the punitive-damage award should bear some relationship to the injury sustained,[14] we agree with Ludwig that the trial court fashioned an equitable award of total damages when it awarded a nominal amount of punitive damages but then awarded a substantial amount of attorney fees, which the court ordered to be paid directly to the appellees. The total award of more than $51,000 was sufficient to vindicate the retributive and deterrent aims of a punitive-damage award, and we accordingly overrule the appellees' second assignment of error. The judgment of the trial court is affirmed.
Judgment affirmed.
Doan, P.J., and Painter, J., concur.
[1] MacEwen v. Jordan, 1st Dist. No. C-020431, 2003-Ohio-1547, at ¶ 12.
[2] Id.
[3] Brooks v. Bell (Apr. 10, 1998), 1st Dist. No. C-970548.
[4] Id., citing In re Wirebaugh (Aug. 9, 1991), 6th Dist. No. WD-90-18; MacEwen at ¶ 13.
[5] MacEwen, supra, at ¶ 13.
[6] C.E. Morris v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
[7] Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273.
[8] See Braun Heating Air Conditioning v. Rennick (May 9, 1990), 1st Dist. No. C-890108.
[9] See, generally, Hilleary v. Scherer (Oct. 30, 1987), 2nd Dist. No. 87-CA-23.
[10] See, e.g., ASR Investments Corp. v. Doran Enterprises,Inc. (Nov. 24, 2000), 1st Dist. No. C-990743.
[11] Digital Analog Design Corp. v. N. Supply Co. (1992),63 Ohio St.3d 657, 660, 590 N.E.2d 737.
[12] Srail v. RJF Intl. Corp. (1998), 126 Ohio App.3d 689,703, 711 N.E.2d 264.
[13] Digital Analog, supra, at 664, 590 N.E.2d 737.
[14] See Alessio v. Hamilton Auto Body, Inc. (1985),21 Ohio App.3d 247, 248, 486 N.E.2d 1224.