In this action for wrongful discharge, plaintiff-appellant Timothy Walton appeals from the trial court order that granted defendant-appellee Greater Cleveland Regional Transit Authority's (RTA's) second motion for summary judgment on appellant's claim.
Appellant asserts he presented adequate evidence to establish his allegations both that appellee lacked justification to discharge him and that appellee failed to act in good faith in discharging him. Appellant also asserts he was not required to follow company procedures in contesting his discharge prior to pursuing this action.
Appellee has filed a cross appeal, challenging the trial court's denial of its first motion for summary judgment.
In its cross appeal, appellee argues the evidence presented to the trial court failed to establish appellant's claim that the parties had an implied contract of continued employment; therefore, summary judgment on appellant's claim was appropriate. This court finds merit in appellee's argument. Since it is dispositive of the other issues raised and makes an entry of judgment in appellee's favor appropriate, this court need not address appellant's assignments of error and consequently dismisses appellant's appeal.
Appellant applied for employment with appellee in 1983. Appellee is a political subdivision of the State of Ohio providing public transportation through Cuyahoga County and portions of adjoining counties. Appellee accepted appellant's application and assigned him to work as an automotive engineer.[1] Subsequently, appellee promoted appellant to the position of Project Manager. Then, in 1987, appellant became Director of [the Department of] Technical Services.
Appellant's department was among the three RTA departments that were under the supervision of RTA's Assistant General Manager of Materials. In 1988, Maynard Z. Walters assumed that position, thus becoming appellant's supervisor.
Prior to the time of appellant's initial employment by appellee, appellee had adopted a set of bylaws for its own governance. Article VIII, Sections 2 and 3, of appellee's By Laws provided in pertinent part as follows:
 Sec. 2. Employment Generally. The General Manager is hereby authorized to employ from time to time on a temporary basis craftsmen and clerical personnel as may be necessary to carry out the operations and programs of the Authority. The General Manager shall be governed by the Personnel Policies and Procedures as adopted by the Board in his or her dealings with permanent and/or full-time employees. * * *
 Sec. 3. Positions of Permanent Employment. The Board shall establish positions of permanent employment from time to time for such management, professional and technical personnel as may be necessary to carry out the operations and program of the Authority. The General Manager is hereby authorized to employ and discharge with cause personnel for such positions and to prescribe their authority and duties. * * *
(Emphasis added.)
Appellee's personnel policies at the time of appellant's hire were included in a pamphlet entitled Merit System Rules. The foreword to these rules stated in pertinent part as follows:
 It is the purpose [of these rules] to provide a sound, comprehensive, and uniform system of personnel administration for the system, whereby effectiveness and economy in the personal services rendered and fairness to the employees and the public alike may be promoted, and employment in the authority may be made attractive as a career to persons qualified to serve therein. These rules shall continue in effective (sic) from July 1, 1952 until amended or rescinded by the Transit Board by resolution.
(Emphasis added.)
Rule 14 listed nineteen grounds for discharge or suspension of employees, including insubordination, conduct unbecoming an employee either on or off duty, willful or repeated violations of any of the personnel rules, and other failures of good behavior detrimental to RTA's operations. Section 3 of this rule authorized the appointing Authority * * * to suspend or discharge an employee for any of the reasons set forth in Rule 14.
Rule 15 detailed the procedure for appeal of personnel decisions for managerial employees. Managerial employees first were required to appeal decisions by stating * * * objections in writing to * * * the General Manager. The rule further stated that any decision not so appealed within ten working days shall be final.
In 1992, appellee adopted both a new Personnel Policies and Procedures manual and an Employee Performance Code and Work Rules. Appellant received copies of these documents.
 Section 1 of the new employee manual contained the following Disclaimer :
* * *
 In the event of any conflict between the GCRTA bylaws and the policies set forth in the Manual, the bylaws shall prevail and for any conflict between the Manual and any applicable laws the law will prevail.
* * *
The policies and procedures in this Manual are not intended to be and shall not be considered contractual commitment of any kind by the Authority. They are intended to be guidelines to managers and merely descriptive of suggested procedures to be followed. The Authority reserves the right to revoke, change, or supplement policies at any time.
 No policy is intended as a guarantee of continuity of benefits or rights. Permanent placement or employment is not intended nor is it implied by any statement in this Manual.
Section 2.8 stated:
 In order to promote fair and impartial treatment of all employees, the Authority has defined rules of conduct.
 It is important that work rules be clearly understood as well as the penalties for certain types of unacceptable behavior.
Discipline is never intended to be punitive.
 It is instead intended to help employees correct unacceptable behavior and to ensure that the Authority is staffed with competent, conscientious and concerned personnel. The Employee Performance Code and Work Rules book provides specific information on the rules of conduct and progressive disciplinary action which may result from violations of the Code.
(Emphasis added.)
Section 6.2 established a complaint procedure, reassuring employees that they were:
 * * * encouraged to discuss freely and fully with their immediate supervisor any questions concerning their duties, responsibilities, and working conditions. * * *
The Authority recognizes, however, that not all problems can be satisfactory (sic) handled in this manner and therefore has established a complaint procedure which assures the employee of careful, impartial, and prompt consideration of any problem or complaint. Individuals who have a work-related complaint are encouraged to avail themselves of this procedure. Another employee of the Authority may assist the complainant if desirable (sic).
That section further indicated that persons in appellant's position will use the following complaint procedure, but Step 1 stated [e]mployees may present concerns in writing to their supervisor within 5 working days of the event which is the source of their complaint. (Emphasis added.) No procedural alternative was set forth should the employee decline to follow the first step.
Appellee introduced its new Employee Performance Code and Work Rules with the following statements:
 This manual presents the Performance Code and Work Rules applicable to all employees of the Greater Cleveland Regional Transit Authority. The Authority wants to assist you, its representative, in doing the best possible job of rendering safe, efficient and dependable service to our customers. The Performance Code serves as a guide to the proper performance of your duties.
The Greater Cleveland Regional Transit Authority was created for one purpose: to serve the transportation needs of the public.
To the public, you are the Greater Cleveland Regional Transit Authority. Your appearance, behavior and treatment of our customers both the riding public and your co-workers reflects the public's opinion of the Authority. Standard rule of conduct are necessary for the effective and safe carrying out of any endeavor.
When you accept a position with the Greater Cleveland Regional Transit Authority, you assume specific responsibilities. Your acceptance of a job with the Authority is your commitment to willingly comply with the Authority's rules and regulations. You are expected to carry out all work assignments and instructions of supervisory personnel, and to conduct yourself and perform your duties in a competent, proficient, professional and ethical manner. These rules and regulations are subject to revision. Any such revision will be indicated by posted bulletins and will be effective on the date specified. Additional rules and regulations for specific departments will be outlined under the Departmental heading.
The following rules have been adopted after careful consideration of the requirements for our operation. You are responsible for the safety and welfare of the general public. Knowledge of the Authority policies, rules and your duties will facilitate achievement of these objectives.
(Emphasis added.)
The manual further stated:
 This Performance Code standardizes discipline for violation of work rules and regulations. It is a code based upon the principles of progressive disciplinary action and clearly points out actions to be taken in cases where an employee's performance is inappropriate.
 Discipline is intended to be corrective, not punitive, giving employees an opportunity to modify their behavior. The code also informs Authority employees of penalties which will be imposed for continued violations of work rules and regulations. It is designed to serve as a guide to supervisory personnel for the purpose of ensuring that disciplinary matters are handled uniformly and fairly.
 Whenever disciplinary action is necessary, the Superintendent, Supervisor or Department Head will consider the employee's total record (including other violations) before determining any penalty. Penalties for violations for multiple rules occurring during the same time period will be considered when assessing discipline. Progressive discipline may be imposed for either a continued disregard for one particular rule or procedure or overall poor job performance and conduct resulting from disregard of two or more rules or procedures.
This Performance Code does not impose a restriction upon management when dealing with disciplinary matters, nor is it the intent of this code to discipline any employee when a particular violation is minor or is an isolated incident. This code is not all inclusive and does not preclude management from disciplining an employee for misconduct not covered in this code. * * *.
Disciplinary penalties for work rule infractions included discharge. Class II Violations of the employee work rules were defined thusly:
 * * * those which generally lend themselves to progressive discipline but may, depending on the seriousness of the offense, result in discharge for first offense violation. These violations are considered for purposes of discipline up to three years from the date of last offense.
Included in Class II Violations was the following:
ARTICLE 203 CONDUCT UNBECOMING AGCRTA
EMPLOYEE
 Conduct unbecoming a GCRTA employee exhibited toward customers, pedestrians, motorists, supervisors or other employees while on duty and/or in uniform and/or on/off authority property, including vehicles. This includes the use of profane or obscene language, threats, intimidation, coercion, altercation, obscene or vulgar gestures or suggestions and racial or ethnic slurs or other disparaging remarks including, but not limited to, any made to or against elderly or disabled people. First Offense: (5) day suspension Second Offense: DISCHARGE Appellee adopted a system of review of its employees' work performance. The performance plan and appraisal listed the employee's job responsibilities, then provided space for both the employee and his or her supervisor to evaluate the employee's execution of them.
Beginning with the review of appellant's job performance for the 1990 calendar year, appellant's supervisor, Walters, began to note that appellant required improvement in some areas, such as interpersonal sensitivity.
In the calendar year 1993, Walters noted appellant experienced difficulty in communicating with others, particularly some staff personnel, in some instances where better communication could have precluded adverse interpersonal relationships. Walters further indicated appellant's judgment had not always been used in situation[s] where it was his responsibility to act in a controlled and professional manner. Walters concluded appellant's skills in developing interpersonal relationships * * * need to be a continued focus area.
Walters based his comments in part upon an altercation that occurred earlier in that year between appellant and a fellow employee, Carl LaCava. Following Walters' investigation of the incident, he had disciplined appellant for assault upon LaCava, in violation of Article 203 of the Performance Code. Appellant received a thirty-day suspension from his employment for the infraction.
In Walters' evaluation of appellant's 1994 performance, he noted appellant was sometimes insensitive, reacted emotionally in conflict situations, needed improvement in the area of inter-department relationships, and should continue to work on developing essential conflict resolution skills. Walters relied in part upon appellant's behavior toward him at a staff meeting that two other department directors also attended; appellant had uttered a particularly unpleasant profanity in a hostile display of temper.
Walters was informed of two more incidents involving similar behavior on appellant's part that occurred in late September 1995. At a quality improvement meeting of department directors and other employees, appellant became abusive and threatening toward employees and other[s]. Moreover, RTA's supervisor of garages complained of an incident during which appellant demonstrated a pattern of abusive, threatening, [and] unprofessional conduct toward him.
On October 25, 1995 Walters notified appellant that as a result of these incidents, appellant had been charged with a second violation of Article 203 of the Employee Performance Code and that a pre-termination hearing would be held to enable appellant to respond to the charges.
The hearing was conducted on October 30, 1995. On November 10, 1995 Walters notified appellant he was found to be in violation of Article 203. Walters indicated that although appellant was subject to discharge for the offense, Walters would impose only a fifteen-day work suspension to end on November 16, 1995. Walters warned appellant any further violations would result in the termination of his employment.
That same day, in a separate letter, Walters notified appellant that an additional allegation, viz., abuse of authority for obtaining personal services from subordinates, had been presented and would be investigated. Subsequently, another pre-termination hearing for appellant was scheduled for November 28, 1995 to consider this and two more alleged violations of the Performance Code. Following the hearing, on November 29, 1995 Walters notified appellant his employment had been terminated.[2]
On August 8, 1996 appellant filed the instant action against appellee. Appellant titled his claim as one for breach of contract, alleging in pertinent part the following:
 5. That on November 29, 1995 the plaintiff was discharged from the Greater Cleveland Regional Transit Authority without just cause.
 6. That the defendant has what is officially known as the Employee Performance Code and Work Rules which is a manual promulgated by the Greater Cleveland Region (sic) Transit Authority which prescribes the standard rules of conduct related to the defendant's employees.
 7. That implied in the Employee Performance Code Work Rules (sic) is an obligation on the part of defendant to discharge for only just cause reasons.
* * *
 9. That the By-Laws Article III, Section 2, further provide[s] the General Manager in dealing with permanent and/or full time employees shall be governed by the Personnel Polices (sic) and Procedure Manual.
* * *
 13. That plaintiff pursuant to the By-Laws and Employee Performance Code and Work Rules could only be discharged for just cause.
 14. That on November 29, 1995 the plaintiff was discharged without just caused (sic)in violation of the By-Laws and Work Rules.
 15. The unjust discharge was contrary to the terms and conditions of the employment agreement between the plaintiff and defendant.
(Emphasis added.)
Appellee denied the pertinent allegations of the complaint in its answer. Discovery thereupon commenced in the action.
On July 11, 1997 the trial court conducted a pretrial conference with the parties. As a result of this conference, appellee was permitted to file a motion for summary judgment with respect to only the issue of whether a just cause contract [of employment] had been created between the parties.
Appellee filed its motion for summary judgment with respect to that issue on September 27, 1997. Appellee argued appellant could not demonstrate the existence of an implied contract of continued employment. Appellee supported this argument with copies of the following: (1) the three documents upon which appellant based his cause of action, viz., RTA's bylaws, together with RTA's 1992 Personnel Policies and Procedures Manual and Employee Performance Code and Work Rules; (2) portions of appellant's deposition testimony; and (3) Walters' letters of notification to appellant concerning the 1993 and 1995 disciplinary actions.
Appellant filed a brief in opposition to appellee's motion. Therein, appellant argued that since appellee's bylaws, by their terms, superceded any personnel policies and the bylaws required cause in order to terminate permanent employees, summary judgment on his claim against appellee was inappropriate.
Appellant attached to his complaint, inter alia, his affidavit. In pertinent part, appellant averred that at the time of his employment, the Merit System Rules and RTA's bylaws governed and that he was informed the Merit System Rules outlined the terms and conditions of [his] employment. Appellant further averred he never assented to any changes in RTA's personnel policies and procedures. Finally, appellant stated as follows:
 8. I was told so long as I performed my job satisfactorily and complied with the terms and conditions of the Merit System Rules my employment would be secure and I would only be discharged for just cause; * * * Although appellee responded to appellant's brief, on February 2, 1998 the trial court denied appellee's motion without opinion.
On December 2, 1998 appellee filed a motion for leave to file a second motion for summary judgment with respect to appellant's claims. The trial court granted appellee's request.
In its second motion, appellee presented two alternative arguments: (1) the evidence established just cause for appellant's discharge; and (2) appellant had failed to follow necessary employee procedures prior to commencing the instant action. Appellee's motion was supported, inter alia, by Walters' affidavit and portions of the deposition testimony of numerous witnesses that had been filed in the trial court.
 Once existed concerning both t action against him was taken and appellee' investigative efforts prior to ordering his discharge. Appellant thus contended just causagain, appellant filed a brief in opposition to appellate resolved by the trial court. Appellant further argued the manual did not require him to pursue administrative remedies. Appellant supported his arguments with additional evidentiary material.
On February 1, 1999 appellee filed a reply brief. On March 12, 1999 the trial court granted appellee's second motion for judgment, citing as the basis for its decision motion. Cleveland Clinic Foundation (July 9, 1987), Cuyahoga App. No. 52293, unreported.
Appellant has filed a timely appeal from the foregoing order. Although he presents three assignments of error,[3] it first is necessary to address appellee's cross appeal filed pursuant to App.R. 3(C)(2) since it is dispositive of the issues raised in this case.
Appellee states the following as its assignment of error:
 THE UNILATERAL CONTRACT THEORY IS INAPPLICABLE TO ALTER AN AT-WILL EMPLOYMENT RELATIONSHIP TO ONE TERMINABLE ONLY FOR CAUSE AND, BECAUSE PLAINTIFF HAD NO EVIDENCE OF ANY MUTUAL ASSENT TO FORM A JUST CAUSE CONTRACT, THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR PARTIAL (SIC) SUMMARY JUDGMENT.
Appellee argues that summary judgment in its favor was appropriate on the basis that the evidence was inadequate to establish the elements of appellant's claim that an implied contract of continued employment existed between the parties. Appellee contends, therefore, the trial court improperly denied its first motion for summary judgment.[4] This court agrees.
In reviewing a motion for summary judgment, this court conducts a de novo review of the trial court's decision. A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C) * * *. Aglinsky v. Cleveland Bldrs. Supply Co. (1990), 68 Ohio App.3d 810.
When the court considers a motion for summary judgment, the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to any material element of the nonmoving party's claim. Dresher[4]
In his response to appellee's argument, appellant does not assert the supreme court's decision in Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150 has any application to this case; therefore, this court will not address any such assertion. v. Burt (1996), 75 Ohio St.3d 280. If the moving party does so, the nonmoving party has a reciprocal burden to produce evidence on any issue for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108. When the defendant, as the moving party, furnishes evidence that demonstrates the plaintiff cannot establish the elements necessary to maintain his action for an implied contract of employment, summary judgment is properly granted in favor of defendant. Hill v. Christ Hospital (Nov. 20, 1998), Hamilton App. No. C-970560, unreported (discretionary appeal not allowed [1999], 85 Ohio St.3d 1446).
In Wright v. Honda of Am. Mfg., Inc. (1995), 73 Ohio St.3d 572
at 574, the Ohio Supreme Court made the following observations for a reviewing court to consider with regard to a cause of action based upon an implied contract of employment:
 In general, under the employment-at-will doctrine, the employment relationship between employer and employee is terminable at the will of either; thus, an employee is subject to discharge by an employer at any time, even without cause. See Henkel v. Educational Research Council of Am. (1976), 45 Ohio St.2d 249, 255, 74 O.O.2d 415, 418, 344 N.E.2d 118, 121-122. However, in Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 104-105, 19 OBR 261, 264-265, 483 N.E.2d 150, 154-155, we first recognized the harshness of this rule and carved out two exceptions to the employment-at-will doctrine: (1) the existence of implied or express contractual provisions which alter the terms of discharge; and (2) the existence of promissory estoppel where representations or promises have been made to an employee.
 In Mers, we recognized that in order to ascertain the explicit and implicit terms concerning discharge in an oral employment agreement, it is important for the trier of fact to review the history of relations between the employer and employee and the facts and circumstances surrounding the employment-at-will relationship. These facts and circumstances include the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question * * *. Id. at 104, 19 OBR at 264, 483 N.E.2d at 154.
Today we take the opportunity to decide what other facts and circumstances can be considered by the trial court. Thus, in order to overcome a summary judgment motion and to raise a factual issue as to whether an employment-at-will agreement has been altered by an implied agreement, the trier of fact can consider, in addition to the facts and circumstances set forth in Mers v. Dispatch Printing, Co., supra, such evidence, which includes, but is not limited to, that information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy.
(Emphasis added.)
Nevertheless, a plaintiff asserting the existence of an implied contract of employment has a heavy burden. Srail v. RJF Internatl. Corp. (1998), 126 Ohio App.3d 689 (discretionary appeal not allowed [1998], 82 Ohio St.3d 1473); Root v. PCC Airfoils, Inc. (Oct. 1, 1998), Cuyahoga App. Nos. 73149, 73150, 73151, 73402, 73403, 73404, unreported. Even construing it most strongly in the employee's favor, an array of evidence is required to demonstrate the following: (1) oral and written assurances that his work performance is linked to job security ; (2) his subjective belief of an expectation of continued employment ; and (3) an indication his employer also had a belief as manifested by its policies, past practices and representations that the employee possessed an expectation of continued employment with the company. Wright v. Honda of Am. Mfg., Inc., supra at 575 and 577.
In this case, although appellant averred in his affidavit that he was told that his satisfactory job performance and compliance with company rules ensured his employment would be secure, he failed to state any details, such as when and by whom, to support this bald statement. Belt v. Roadway Express, Inc. (1992),83 Ohio App.3d 706; Cf., Condon v. Body, Vickers and Daniels (1994), 99 Ohio App.3d 12. Instead, in his deposition testimony, appellant stated only that he was hired in 1983; neither an orientation nor conversations with company officials was mentioned.
Thereafter, appellant also stated he could not remember the names of any of the persons with whom he interviewed in order to be considered for the position he eventually obtained. Furthermore, appellant stated he could not recall exactly what was discussed during the interviews but believed he was required to explain how [he] thought [he] would benefit to (sic) RTA. Srail v. RJF Internatl. Corp., supra; see, also, Wing v. Anchor Media of Texas, Ltd. (1991), 59 Ohio St.3d 108. He indicated he had no further discussions with RTA officials prior to assuming the position. Furthermore, appellant failed to state he received any assurances of job security during his tenure as a manager. Weiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 250; Clipson v. Schlessman (1993), 89 Ohio App.3d 230.
Finally, appellant admitted he had never seen RTA's bylaws prior to the date of his deposition, and, although he had copies of RTA's employee manuals, he was not very familiar with them. Hultberg v. Ohio Edison Co. (1996), 116 Ohio App.3d 130; Lawrence v. Edwin Shaw Hospital (1988), 57 Ohio App.3d 93 (appeal dismissed [1990], 50 Ohio St.3d 601).
A review of Walters' deposition testimony, moreover, demonstrates only a traditional employer-employee relationship existed between the parties. Srail, supra; Pyle v. Ledex, Inc. (1988), 49 Ohio App.3d 139. Walters indicated appellant's performance reviews were conducted mainly to ascertain his eligibility for pay raises. Helmick v. Cincinnati Word Processing, Inc. (1989), 45 Ohio St.3d 131
. When problems began to surface concerning appellant's relations with his colleagues, Walters' comments on the evaluations were more cautionary than reassuring. Hill v. Christ Hospital, supra; cf., Wright v. Honda Am. Mfg., Inc. supra; Stroble v. Sir Speedy Printing Ctr. (1990), 68 Ohio App.3d 682.
Furthermore, at no time did Walters in his testimony reveal any policy, practice, or language that could be construed as an intent on RTA's part to alter the terms of an at-will employment relationship, thus creating an expectation of continued employment. Healey v. Republic Powdered Metals, Inc. (1992), 85 Ohio App.3d 281.
In short, appellant failed to sustain his burden to provide enough evidence to raise a genuine issue of material fact with respect to his claim that an implied contract existed between the parties. Srail, supra. Under these circumstances, summary judgment for appellee on its first motion was appropriate. Id. Therefore, the trial court erred when it denied appellee's motion.
Accordingly, appellee's cross-assignment of error is sustained. The trial court's order of February 2, 1998 denying appellee's first motion for summary judgment is reversed.
This court's disposition of appellee's cross appeal renders appellant's appeal moot. App.R. 12(A)(1)(c).
Appellant's appeal is dismissed. Appellee's cross-assignment of error is sustained. The trial court's order denying appellee's first motion for summary judgment is reversed, and judgment is entered for appellee on appellant's complaint.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J. and JOHN T. PATTON, J. CONCUR
 ________________________ KENNETH A. ROCCO, JUDGE
[1] Quotes are taken from evidentiary material filed in the trial court.
[2] The record reflects appellant obtained new employment in January 1996.
[3] Appellant set forth the following as his assignments of error:
 I. WHETHER THE LOWER COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT IN GRANTING THE SUMMARY JUDGMENT MOTION WHEREIN THE EVIDENCE ESTABLISHED A LACK OF SUBSTANTIAL EVIDENCE TO JUSTIFY THE DISCHARGE OF THE PLAINTIFF-APPELLANT.
 II. WHETHER THE COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT IN GRANTING THE APPELLEE'S SUMMARY JUDGMENT MOTION WHERE THE EVIDENCE ESTABLISHED A LACK OF GOOD FAITH ON THE PART OF THE DEFENDANT-APPELLEE.
 III. THE TRIAL COURT ERRED IN CONCLUDING PLAINTIFF-APPELLANT'S CASE SHOULD BE DISMISSED AS A MATTER OF LAW BECAUSE HE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.
[4] In his response to appellee's argument, appellant does not assert the supreme court's decision in Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150 has any application to this case; therefore, this court will not address any such assertion.