PRUDENTIAL INSURANCE CO. OF AMERICA *v.* HASHMAN, APPELLEE; CURTIS, APPELLANT.

56

(No. 81 X 5—Decided February 25, 1982.)

*Ms. Susan E. Boyer,* for appellee Leonard E. Hashman, Sr.

*Ms. Julia A. Lambe,* for appellant Deloris E. Curtis.

STEPHENSON, J. This is an appeal from a judgment entered by the Washington County Court of Common Pleas upon a jury verdict awarding Leonard E. Hashman, Sr., defendant-appellee herein, the sum of $10,887. The defendant-appellant, Deloris E. Curtis, alleges the following assignments of error:

1. "It is reversible error in a civil case between divorced parents, a mother and father, who dispute the distribution of life insurance proceeds of their deceased adult child where the sole legal issue is abandonment of the deceased child during minority for the white father to call the subpoenaed black spouse of the white mother as witness for the white father, over objection of counsel, when the testimony elicited by the party calling the witness is not relevant and material because it deprives the defendant mother of an impartial jury trial under the Ohio Constitution and the United States Constitution and is in violation of the Rules of Evidence."

2. "It is reversible error to call an intoxicated witness whose testimony is not relevant and material to the issue of abandonment during minority when the court fails to conduct a competency examination after objection of counsel."

3. "The verdict of the jury is against the weight of the evidence and the injection of racial prejudice into the trial resulted in a bias against appellant, the unsuccessful party in the trial court which requires a reversal."

The appellant and appellee were married on January 29, 1954. During this marriage, two children were born to the parties herein, a daughter, named Alberta, and a son, named Leonard E. Hashman, Jr., who was born on July 22, 1956. The appellant and appellee were divorced on February 24, 1958, with custody of the two minor children awarded to appellee.

Upon attaining majority, Leonard E. Hashman, Jr., entered the armed services. At the time of his death on March 9, 1979, Leonard's life was insured by a Servicemen's Group Life Insurance policy issued pursuant to Sections 765 *et seq.,* Title 38, U.S. Code, in the amount of $20,000. This policy was issued by plaintiff, Prudential Insurance Company of America. The life insurance policy designated no beneficiary. The plaintiff paid appellee $10,000, together with interest of $125.80, and thereafter instituted this interpleader action against the appellee and appellant in order to determine which party was entitled to the balance of the insurance proceeds. Prudential paid the balance of the insurance proceeds into the court and was dismissed by the court as an active party in the action.

The appellee and appellant both asserted claims to the proceeds. The appellant alleged that she was entitled to the proceeds under Section 770(a), Title 38, U.S. Code.[1] The appellee claimed that he was entitled to the proceeds under Sections 770(a) and 765(a), Title 38, U.S.

---

[1] Section 770 (a), Title 38, U.S. Code, provides as follows:

"Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

"First, to the beneficiary or beneficiaries

Code,[2] for the reason that appellant had abandoned Leonard, Jr. during his minority.

The matter was tried before a jury. The trial judge instructed the jury upon abandonment and no issue is raised as to the correctness of such instructions. The jury returned a verdict in favor of appellee and judgment was entered upon the verdict.

Although appellant fails to separately argue each assignment of error as required by App.R.12(A), we will nevertheless consider each of appellant's assignments of error.

Appellant essentially asserts in her first assignment of error that the court should have excluded the testimony of her husband, George Curtis, who was called as a witness by appellee, on the grounds that his testimony was not relevant to the issues being tried because it was potentially prejudicial in that it necessarily disclosed to the jury that appellant had entered into an interracial marriage with Mr. Curtis who is a black.

Evid.R.401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Evid.R.402 essentially provides that all relevant evidence is admissible except as otherwise provided by law. Even though evidence is relevant, it must be excluded if the conditions set forth in Evid.R.403 apply, the rule reading, in part, as follows:

"(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

The testimony of Mr. Curtis, which related to the relationship between appellant and her son after he became an adult, was relevant and of some probative value to the abandonment issue to the extent that it tended to establish a continued affection for, and interest in, her son by appellant. Indeed appellant introduced evidence of such relationship in support of her claim of non-abandonment. The question then devolves into whether the trial court erred in determining that the probative value of the testimony was not outweighed by the danger of unfair prejudice.

Appellant essentially asserts the purpose of appellee's calling Mr. Curtis was

---

as the member or former member may have designated by a writing received prior to death (1) in the uniformed services if insured under Servicemen's Group Life Insurance, or (2) in the administrative office established under section 766 (b) of this title if separated or released from service, or if assigned to the Retired Reserve, and insured under Servicemen's Group Life Insurance, or if insured under Veterans' Group Life Insurance;

"Second, if there be no such beneficiary, to the widow or widower of such member or former member;

"Third, if none of the above, to the child or children of such member or former member and descendants of deceased children by representation;

"Fourth, if none of the above, to the parents of such member or former member or the survivor of them;

"Fifth, if none of the above, to the duly appointed executor or administrator of the estate of such member or former member;

"Sixth, if none of the above, to other next of kin of such member or former member entitled under the laws of domicile of such member or former member at the time of his death."

[2] Section 765 (9), Title 38, U.S. Code, in pertinent part, provides as follows:

"* * * No person who abandoned or willfully failed to support a child during his minority, or consented to his adoption may be recognized as a parent for the purpose of this subchapter. * * *"

to inject a racial issue to influence the jury to appellant's prejudice. We do not reach or decide if that was the purpose in calling the witness except to note little color is given to that claim inasmuch as his testimony aided appellant and not appellee. Whatever the purpose, the question remains as to whether the court erred in admitting the testimony.

Appellant's argument of exclusion is bottomed upon the premise that the jury was prejudiced against appellant by the interracial marriage and potentially returned a verdict different than it would have absent such evidence. We view that necessary premise as speculative, as apparently did the trial court. The Supreme Court of the United States in *Fairmont Glass Works* v. *Cub Fork Coal Co.* (1933), 287 U.S. 474, 485, aptly observed that "[a]ppellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct."

Taking the record as a whole, we are not persuaded that it sufficiently demonstrates, either actually or probably, that the testimony of such witness so prejudiced the jury that exclusion was required. Jury prejudice will not be presumed; rather, a jury verdict is, to the contrary, presumed to be based upon the evidence presented at trial and uninfluenced by passion or prejudice. See 5 Ohio Jurisprudence 3d 146, Appellate Review, Section 580. Appellant's first assignment of error is, therefore, overruled.[3]

Appellant's second assignment of error argues that when appellant objected to the testimony of Mr. Curtis upon the ground he was intoxicated, the court should have conducted an appropriate inquiry. This issue was recently before the court in *State* v. *Adkins* (Jan. 20, 1982), Scioto App. No. 1307, unreported. In substance, we there concluded that in the fair administration of justice a person whose mind is so beclouded by the use of intoxicants that he could not relate with truthfulness and accuracy his observation or understand the nature of his oath ought not be allowed to testify at that time since such a person would necessarily be of "unsound mind" within the meaning of R.C. 2317.01 and also under Evid. R. 601. Speaking generally to the issue the opinion states, at pages 4-5, the following:

"It is the generally accepted view that the determination of a witness's competency is solely a province for the trial judge and his determination will not be disturbed absent an abuse of discretion. *State* v. *Braden* (1936), 56 Ohio App. 19 [9 O.O. 200]. In addition, it is the rule generally in other jurisdictions that a trial judge's determination whether a witness is so intoxicated so as to render him incompetent to testify is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Hartford* v. *Palmer*, 16 Johnson Rep. 143 (N.Y. 1819); *State* v. *Underwood* (1845), 28 N.C. 96; *Gould* v. *Crawford* (1845), 2 Pa. 89; *Diamond* v. *State* (Ala. Crim. App. 1972), 268 So. 2d 850.

"We believe there is merit in appellant's argument that, when objection of incompetency is made, that generally separate inquiry by the court should be promptly made. See discussion in 56 Ohio Jurisprudence 2d 519, Section 89. The objection here was made after thirty-eight questions were asked and answered by the witness, thus allowing a sufficient time and basis of evaluating the witness's degree of intoxication and presumedly such observation was made by the court."

While we view the failure to conduct an appropriate inquiry upon objection being made below as error, we are not, however, further persuaded it was pre-

---

[3] Although the voir dire examination of the jury is not included in the transcript of proceedings, it appears the issue was first raised by a motion in limine which was overruled.

judicial. First, we are confident that if the witness' intoxication was of such a degree that the witness was incoherent and obviously unable to appreciate the nature of the oath, the trial court would have *sua sponte* taken appropriate action. In our review of the testimony of the witness we note the answers to the questions asked were responsive and coherent. Further, we note on direct examination as to alcohol consumed he testified he had one beer at noon with his lunch and, since the witness was not cross-examined, the record does not disclose any greater consumption.

We hold the admission of the testimony was not an abuse of discretion and overrule the second assignment of error.

Appellant's third assignment of error argues that the jury's verdict is against the manifest weight of evidence.

The evidence introduced at trial establishes that after the divorce the appellant exercised her visitation rights to her children for several years. However, since 1960, appellant admits that she did not see her son again until he was in the ninth or tenth grade. Thereafter, appellant only saw her son after he reached the age of majority. The evidence is uncontroverted that appellant did not provide any financial assistance, but by the same token, no order of support required any payment by her.

The appellant's evidence tended to justify her non-contact with her son by evidence that appellee threatened appellant and ordered her not to see the children, although appellee denied such allegations. In addition, appellant testified that she attempted to mail the children numerous cards and letters, but they were all returned to appellant. Appellee presented testimony that no cards or letters were ever received or returned by appellee. There was also testimony that appellee refused to allow the son, during minority, to contact appellant.

Upon our review of the markedly conflicting evidence in the record, we conclude sufficient evidence exists for reasonable minds to fairly conclude, as the jury necessarily did under the instructions, that appellant abandoned her son. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261]. Appellant's third assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GREY, P.J., and ABELE, J., concur.