JOURNAL ENTRY AND OPINION.
{¶ 1} This is an appeal and cross appeal of a jury verdict, following trial before Visiting Judge Robert Feighan, that awarded a total of $28,500 in damages to appellees/cross appellants Edward and Deborah Jones for injuries sustained by Edward Jones. Appellants John and Eleanor Capco contend that it was error to permit Jones' treating physician to testify to matters not contained in his report, while the Joneses submit it was error to deny them a prejudgment interest hearing. We affirm.
 {¶ 2} From the record we glean the following: On July 28, 1999, Jones, a United States Postal Services employee, entered the fenced yard at the Capcos' home to deliver mail as he had done for about a year. Although he knew that the Capcos' two dogs could be outside, he did not see or hear them but, as he was placing the mail in the box on the porch, he claimed he felt either a tongue or nose against his bare leg and reacted by lowering his arm in a "sweeping gesture" at whatever had touched him. The dog or dogs then bit his left leg causing him to fall and, when he tried to escape them, he fell on the sidewalk twisting his ankle. Hearing the commotion, Mrs. Capco came out the front door to see Jones angrily walking away and a pile of mail scattered around her front yard.
 {¶ 3} Jones continued his work, reported the incident and went to the hospital for treatment of the puncture wounds. He returned to the hospital the following day complaining of an inflamed right ankle and foot. He was treated by a number of physicians for his ongoing ankle problems. In a September 2000 report, Dr. Sheldon Kaffen, M.D., opined that the July 1999 incident caused Jones to suffer superficial bites to his left leg and a chronic sprain of the right ankle with tendonitis.
 {¶ 4} Jones and his wife brought suit against the Capcos alleging personal injuries to him and loss of consortium for her. During the videotaping of Dr. Kaffen's testimony for trial, and over the objection of the Capcos' lawyer, he mentioned that Jones' ankle injury was permanent and that surgery "may be an option in the future."
 {¶ 5} Claiming trial by ambush, the Capcos filed a motion in limine seeking to exclude those portions of Dr. Kaffen's testimony relating to the permanency of Jones' condition and the potential for future medical care or surgery. They claimed that they had relied on the doctor's report that had not mentioned permanency or additional medical care. Because his two-year-old report had never been supplemented to include such opinions, they contended that permitting such testimony violated Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County, General Division. Judge Feighan excluded only that portion of the deposition relating to permanency.
 {¶ 6} During trial the judge granted the Joneses' motion for a directed verdict on liability on the basis that there was no evidence that Jones had teased, tormented, or abused the dogs.[1] The jury awarded Jones $26,000 and Mrs. Jones $2,500. Thereafter, the Joneses moved for a prejudgment interest hearing, which Judge Daniel Gaul, who was originally assigned to the case, denied.
 {¶ 7} The Capcos assert six assignments of error and the Joneses a single assignment of error, all fully set forth in Appendix A.[2]
FUTURE MEDICAL TREATMENT
 {¶ 8} The first three assignments of error challenge the propriety of denying that portion of the Capcos' motion in limine that permitted the jury to hear the doctor's opinion about Jones' need for future care and treatment as well as the possibility of surgery. The record reflects that prior to opening statements, the Capcos renewed their motion in limine but then failed to object to Dr. Kaffen's testimony before or after the videotape was played to the jury.[3] A ruling on a motion in limine does not preserve the record for appeal. An appellate court need not review the propriety of such an order unless the claimed error is preserved by objection, proffer, or ruling on the record when the issue is actually reached during the trial.[4] Because the Capcos waived any error in the admission of Dr. Kaffen's testimony,[5] their first three assignments of error lack merit.
DIRECTED VERDICT ON LIABILITY
 {¶ 9} The Capcos contend that, because of discrepancies between the testimony of Jones and Mrs. Capco, as each described the factual scenario surrounding the incident, the judge should not have granted the Joneses' motion for a directed verdict on liability. Motions for directed verdict challenge the legal sufficiency of the evidence presented and are subject to a de novo review. The judge is confronted solely with a question of law: Was there sufficient material evidence presented at trial on the issue to create a factual question for the jury?[6] We review the evidence in the light most favorable to the non-moving party to determine whether there was enough evidence to allow a reasonable jury to find in his favor.[7]
 {¶ 10} R.C. 955.28 is a strict liability statute, and states in relevant part:
(B) The owner, keeper, or harborer [ * * * 6] of a dog is liable indamages for any injury, death, or loss to person or property that iscaused by the dog, unless the injury, death, or loss was caused to theperson or property of an individual who, at the time, was committing orattempting to commit a trespass or other criminal offense on the propertyof the owner, keeper, or harborer, or was committing or attempting tocommit a criminal offense against any person, or was teasing,tormenting, or abusing the dog on the owner's, keeper's, or harborer'sproperty.
 {¶ 11} During Jones' trial cross-examination, a portion of his earlier deposition testimony was read to him.
"Mr. Cononico: Okay, we'll try this again, beginning with line twelve.Question, `What was the purpose of making a swinging gesture?' Answer,`Because I automatically felt something touch my legs, natural instinct.'Did I read that correctly?
 "Mr. Jones: Yes.
 "Mr. Cononico: Okay. So what you're saying there is you made thissweeping gesture as a natural instinct of feeling the dog's nose ortongue against your right leg.
 "Mr. Jones: Yes."
 {¶ 12} Jones was the only witness to the incident, and there was no other evidence that, prior to the bite(s), he was teasing, tormenting or abusing the dogs. At best, the testimony establishes that after something touched his leg, Jones reactively moved his arm. Construing that evidence most strongly in the Capcos' favor, one does not find a defense to the absolute liability imposed upon them.[8] A directed verdict on that issue was appropriate and this fifth assignment of error lacks merit.
MANIFEST WEIGHT
 {¶ 13} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.[9]
For their final assignment of error, the Capcos submit that the jury awards totaling $28,500 "seems patently absurd"[10] and not supported by the evidence.
 {¶ 14} In evaluating a challenge to the verdict based on manifest weight of the evidence presented at trial, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a jury which has "lost its way."[11] This power is subject to strict and narrow constraints.
"Weight of the evidence concerns `the inclination of the greater amountof credible evidence offered in a trial, to support one side of the issuerather than the other. It indicates clearly to the jury that the partyhaving the burden of proof will be entitled to their verdict, if, onweighing the evidence in their minds, they shall find the greater amountof credible evidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on its effectin inducing belief.'" * * *
 "The court, reviewing the entire record, weighs the evidence and allreasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction."[12]
 {¶ 15} At trial, the jury heard evidence reflecting Jones' lost wages, his medical expenses, his pain and suffering, how the injuries affected his life, the findings and opinions of a treating physician, and Mrs. Jones' loss of consortium. The Capcos did question the nature and extent of Jones' ankle condition, lapses in his medical treatment, and two subsequent incidents resulting in injury of the same ankle.
 {¶ 16} Damages awarded in personal injury actions are within the province of the jury and mere disagreement with the verdict does not warrant setting it aside.[13] The mere amount of a jury's award does not constitute evidence of passion or prejudice[14] because, absent evidence to the contrary, jury verdicts are presumed to be based on the evidence presented at trial and uninfluenced by passion or prejudice.[15]
 {¶ 17} The jury exercised its discretion in awarding $28,500 to compensate Jones for the dog bite(s), his ankle sprain, pain and suffering, medical expenses, and loss of income, and Mrs. Jones for the loss of her husband's services resulting from his injury. There is no indication in the record that indicates that the jury lost its way in awarding damages and no interrogatories submitted to test the verdict. Furthermore, the trial judge found no reason to disturb the verdict. The sixth assignment of error lacks merit.
CROSS APPEAL: PREJUDGMENT INTEREST
 {¶ 18} The Joneses contend that, before Judge Daniel Gaul denied their motion for prejudgment interest, they were entitled to a hearing on the issue. We review the grant or denial of prejudgment interest for abuse of discretion.[16] R.C. 1343.03(C) provides in pertinent part:
"Interest on a judgment, decree, or order for the payment of moneyrendered in a civil action based on tortious conduct and not settled byagreement of the parties, shall be computed from the date the cause ofaction accrued to the date on which the money is paid, if, upon motion ofany party to the action, the court determines at a hearing heldsubsequent to the verdict or decision in the action that the partyrequired to pay the money failed to make a good faith effort to settlethe case and that the party to whom the money is to be paid did not failto make a good faith effort to settle the case."
 {¶ 19} While the plain language of the statute requires a hearing, the judge has discretion to decline to convene a hearing if it appears that no award is likely.[17] If the motion for prejudgment interest is obviously not well taken, the judge can deny the motion without conducting an oral hearing.[18] The decision not to hold a hearing is based upon evidence presented in the motion and briefs. The judge's decision to do so is within his broad discretion, just as if he were determining whether a party had made a good faith offer to settle.[19]
 {¶ 20} In the Capcos' brief opposing prejudgment interest, they explained the reasons underlying their offer(s)and their surprise over Dr. Kaffen's eleventh-hour trial opinions. They pointed out two subsequent injuries to Jones' right ankle and resultant costs and losses associated which, they contended, did not flow from any dog bite-related incident. In short, they questioned the Joneses' claimed losses in addition to the causal relationship between the ankle complaints that appeared many hours after Jones received treatment for three superficial puncture wounds, and their liability for the bite(s). From the record we cannot say it was an abuse of discretion to deny the motion without a hearing.
Judgment affirmed.
APPENDIX A: ASSIGNMENTS OF ERROR
 {¶ 21} "I. The trial court erred when it allowed plaintiff's medical expert to testify regarding plaintiff's alleged need for surgery, future care, and treatment of plaintiff's injuries because such opinions were not reflected in his report in violation of cuyahoga county court of common pleas general rule 21.1(b).
 {¶ 22} "II. the trial court erred when it allowed plaintiff's medical expert to testify regarding plaintiff's alleged need for surgery for plaintiff's injuries because plaintiff failed to present defendant with a supplement to the report as required by civil rule 26(e)(1)(b).
 {¶ 23} "III. the trial court erred when it allowed plaintiff's medical expert to testify regarding plaintiff's alleged need for surgery because such opinions did not meet the standard of probability as established by ohio courts.
 {¶ 24} "IV. the trial court erred when, despite ruling that plaintiff's medical expert could not testify that plaintiff's injury was permanent in nature, it allowed some testimony regarding permanency to reach the jury.
 {¶ 25} "V. the trial court erred when it directed a verdict as to liability despite defendant's presentation of evidence that supported the facts essential to its defense and upon which reasonable minds could reach differing conclusions as to whether or not plaintiff teased or tormented the dogs.
 {¶ 26} "VI. the verdict and judgment of the trial court were contrary to the manifest weight of the evidence."
 Cross Appeal {¶ 27} "I. the trial court erred and abused its discretion in denying plaintiff's motion and request for a hearing on the prejudgment interest pursuant to O.R.C. 1343.03(c), where the trial court fails to participate in meaningful negotiations, does not hear the evidence and plaintiff demonstrates a prima facie good faith effort to negotiate a settlement."
James J. Sweeney, J., and Colleen Conway Cooney, J., Concur
[1] R.C. 955.28.
[2] The Capcos withdrew assignment of error number IV prior to argument.
[3] Although the record contains the videotape, the redacted transcript indicating what was being excluded is not present and what was heard by the jury was not transcribed by the official court reporter. We cannot, therefore, ascertain whether any objection was made during the testimony itself.
[4] State v. Grubb (1986), 28 Ohio St.3d 199, 503 N.E.2d 142; State v.White (1982), 6 Ohio App.3d 1, 451 N.E.2d 533.
[5] State v. Grubb, supra.
[6] Malone v. Courtyard by Marriott L.P., 74 Ohio St.3d 440,1996-Ohio-311, 659 N.E.2d 1242, as cited by Rothenbusch-Rhodes v. Mason
(Sept. 4, 2003), Franklin App. No. 02AP-1028.
[7] Srail v. RJF Internatl. Corp. (1998), 126 Ohio App.3d 689, 707,711 N.E.2d 264, 276, citing Posin v. ABC Motor Court Hotel (1976),45 Ohio St.2d 271, 275, 344 N.E.2d 334, 338.
[8] Civ.R. 50(A)(4).
[9] C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
[10] Appellants' brief pg. 22.
[11] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[12] Id. at 387.
[13] Litchfield v. Morris (1985), 25 Ohio App.3d 42, 44,495 N.E.2d 462.
[14] Jeanne v. Hawkes Hosp. of Mt. Carmel (1991), 74 Ohio App.3d 246,598 N.E.2d 1174.
[15] Prudential Ins. Co. of America v. Hashman (1982), 7 Ohio App.3d 55,454 N.E.2d 149.
[16] Kalain v. Smith (1986), 25 Ohio St.3d 157, 495 N.E.2d 572.
[17] Werner v. McAbier (Jan. 13, 2000), Cuyahoga App. No. 75197, 75233.
[18] Fazio v. Meridian Ins. Co. (Apr. 9, 1998), Cuyahoga App. No. 73320.
[19] Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83,482 N.E.2d 1248.