OPINION
{¶ 1} Defendant-appellant Laura Whited appeals from the January 9, 2006, Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Laura Whited and appellee Randall Whited were married on August 31, 2000. One child was born as issue of such marriage, namely, Yoselin (DOB 10/29/01).
 {¶ 3} On February 14, 2005, appellee filed a complaint for divorce against appellant in the Stark County Court of Common Pleas, Domestic Relations Division. Pursuant to a pretrial order filed on July 12, 2005, appellant was granted leave to file an answer and a trial date was scheduled before a Magistrate for September 7, 2005.
 {¶ 4} On September 7, 2005, prior to testimony, appellee made an oral motion for judgment on the pleadings since appellant had failed to file an answer. Appellee indicated that he was "ready to proceed uncontested today" and specifically requested that appellant be "barred from presenting any issues especially on the issue of custody considering no custody affidavit has been filed [by appellant]." Transcript at 4. The Magistrate granted appellant's motion in part, stating, in relevant part, as follows:
 {¶ 5} "THE COURT: Okay. I have had an opportunity to review the file the pleadings and ah review the applicable law and policy on this and after review of the file there is no responsive pleadings um so with regard I'm going to ah grant this Motion in part um the Plaintiff will be permitted to put on evidence on issues of grounds . . . custody whatever but you may present evidence as to whether you feel the division of property is equitable. Um so I'm going to ask how many witnesses you have to call today." Transcript at 12.
 {¶ 6} At the trial, appellee testified that he wanted the trial court to adopt a shared parenting plan designating him the residential parent when, Yoselin, their daughter, was residing with him and appellee the residential parent when Yoselin was residing with her. Appellee testified that he wanted the court to adopt a week to week plan that would extend from Sunday at 6:00 p.m. until the following Sunday at 6:00 p.m. Appellee testified that when his daughter was home, he saw her every evening and that she lived a half mile from where he worked.
 {¶ 7} Appellee also testified that he had four other children who lived with their mother in a duplex that appellee owned and that he had a good relationship with such children. Appellee took Yoselin to see her sisters every time she was with him. According to appellee, Yoselin's sisters lived approximately a mile from where Yoselin lived. Appellee indicated that he did not want Yoselin to be taken from the State of Ohio, but agreed that appellant could take Yoselin to Texas for a two week vacation each year.
 {¶ 8} Appellee also testified that he made approximately $55,000.00 a year. In the past, appellee had made approximately $65,000.00 a year working more hours.
 {¶ 9} The following testimony was adduced when appellee was asked whether he had discussions with appellee about Yoselin moving to Texas:
 {¶ 10} "Q. Okay. And at one point were you in Agreement with that?
 {¶ 11} "A. Yes I was.
 {¶ 12} "Q. But you are not in Agreement with that today is that correct?
 {¶ 13} "A. No I am not.
 {¶ 14} "Q. Have things changed in the past five or six months to lead you to believe that . . . that is not in the best interest of your daughter?
 {¶ 15} "A. Yes.
 {¶ 16} "Q. Can you tell the Court of an example of why you feel that way?
 {¶ 17} "A. When I visit with my daughter the statements that my daughter say to me um you don't love my Mommy so you don't love me. Um you're trying to take my home from me. Um my Mommy says that I need to go to Texas with her or she'll die without me.
 {¶ 18} "Q. Okay. And was this Agreement that you entered into with your wife about her moving to Texas was that prior to when she vacated your marital residence?
 {¶ 19} "A. Yes. . . .
 {¶ 20} "Q. Are you aware that there was a Court ordered [sic] that indicated that the two of you were to live under the same roof while this divorce was pending?
 {¶ 21} "A. Yes.
 {¶ 22} "Q. Did in fact the two of you live under the same roof while this divorce was pending?
 {¶ 23} "A. Only until July.
 {¶ 24} "Q. And did you ask your wife to vacate the marital residence?
 {¶ 25} "A. No I did not.
 {¶ 26} "Q. Did she do that voluntarily and on her own?
 {¶ 27} "A. Yes she did." Transcript at 22-23.
 {¶ 28} On cross-examination, appellee testified that he met appellant while she was a migrant worker at the farm he works at. Appellee testified that he was required to work fifty hours a week at the farm, but that "anything above that is my choosing." Transcript at 25. From February through April, appellee worked from approximately 1:00 a.m. until 5:00 p.m. the next day. Appellee testified that he worked six and a half days a week at the farm and that, on Saturdays, he worked from 5:00 a.m. until noon and on Sundays, he worked from 6:00 a.m. until 10:00 a.m. During the growing season, appellee sometimes worked from 5:00 a.m. until 7:00 p.m.
 {¶ 29} On cross-examination, appellee admitted that he had told the Guardian Ad Litem that visitation was no longer contested and that he had signed an agreement in March of 2005 with appellant providing that Yoselin would reside with appellant during the school year and with him during the summer break. Appellee further testified that, when he married appellant, he knew that her extended family was not from this area. According to appellee, while appellant worked during the summer months, either appellant's mother or his mother would care for Yoselin. During the remainder of the year, from approximately the end of October until May, appellant was Yoselin's primary caretaker. When questioned, appellee agreed that he had never provided any primary care for Yoselin. The following is an excerpt from appellee's testimony:
 {¶ 30} "Q. Okay. Has there ever been ah . . . well strike that . . . let's go back to the document that was ah marked as Defendant's exhibit number 2 for purposes of identification that executed between you and Laura back in March . . . when you signed this document . . . you intended ah that you be bound by it correct?
 {¶ 31} "A. This time yes.
 {¶ 32} "Q. And in that document you laid out all the issues that you thought were relevant with respect to the pending divorce is that correct?
 {¶ 33} "A. Yes I guess so.
 {¶ 34} "Q. So . . . at the time that you executed this document you expected that the Mother would have your child Yoslin [sic] for the school year correct?
 {¶ 35} "A. Yes.
 {¶ 36} "Q. Okay and you expected that she was going to go to Brownsville Texas correct?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. Okay. Why would you expect that Yoslin [sic] or I'm sorry that my client Laura would go to Brownsville Texas?
 {¶ 39} "A. To be closer with her family.
 {¶ 40} "Q. You would concede that your child has close bonds to Laura's side of the family correct?
 {¶ 41} "A. She has close bonds with both sides of her family.
 {¶ 42} "Q. But she's close with her grandmother in particular on Laura's side of the family?
 {¶ 43} "A. And her grandmother on my side of the family as well." Transcript at 49-50.
 {¶ 44} When asked whether, come January, he was going to have to go to work in the early morning hours, appellee, on cross-examination, testified that he had spoken with his employer and that his employer "understands the importance of your child. He said that he would work with me for this and during this time." Transcript at 58. Appellee testified that his family was willing to help him with Yoselin.
 {¶ 45} On redirect, appellee testified that his employer was willing to be flexible with respect to appellee's work schedule and that he was required to work a minimum of fifty hours a week and was willing to do so the weeks that he had Yoselin. Appellee further testified that appellant worked overtime and worked a total of approximately fifty hours a week. Appellee further testified that the separation agreement signed by the parties was never filed with the court and was not binding. Appellee testified that he believed that appellant, who is from Mexico, intended to be in the United States and had adapted well to Ohio and made friends here. The two, according to appellee, had never discussed relocating to somewhere else. When asked, appellee indicated that he did not want Yoselin's residency to be moved out of the State of Ohio.
 {¶ 46} Appellant also testified at the trial before the Magistrate. Appellant testified that her family lived in Texas, but that some of her family members, including her two brothers, and mother came up to Ohio from June through part of October to work for the season. Appellant testified that she worked for the Texas Migrant Counsel from June to October making $8.65 an hour as a cook in the Hartville, Ohio area, but that she had an opportunity to work ten months a year for $9.25 an hour in Texas. Appellant testified that she moved out of the marital home in violation of a court order because appellee was having an affair. According to appellant, appellee always worked long hours during the parties' marriage.
 {¶ 47} At trial, appellant further testified that she planned to stay in the United States and had been given a ten year residency that was renewable at the end of ten years. Appellant testified that she intended to keep Yoselin in the United States.
 {¶ 48} On cross-examination, appellant testified that Carla Garcia was a friend of hers who she believed lived in Texas. Appellant admitted that the social security number listed for Garcia was actually appellant's own social security number and that she had used the name of Carla Garcia. On redirect, appellant testified that, before she became a resident of the United States, she worked under the name of Carla Garcia. However, appellant denied using her social security number with Carla Garcia's name. According to appellant, the Social Security Administration "got your social security number with the wrong name." Transcript at 102.
 {¶ 49} The Magistrate, in a decision filed on October 12, 2005, reiterated her decision made on the record that appellant was "barred from presenting evidence as to grounds, custody, etc. Defendant may cross-examine Plaintiff's witnesses."
 {¶ 50} As memorialized in a Magistrate's Decision filed on October 20, 2005, the Magistrate recommended that the parties enter into a shared parenting plan designating appellee the primary residential parent and legal custodian. The Magistrate further recommended as follows:
 {¶ 51} "3. The Defendant shall enjoy parenting time with the child on a week-to-week basis, from Sunday at 6:00 p.m. until the following Sunday at 6:00 p.m. The parent receiving the child shall transport the child.
 {¶ 52} "4. Holiday companionship shall be as the parties agree, and if they cannot agree, then they shall follow the Stark County Family Court Schedule A. . . .
 {¶ 53} "8. The Plaintiff's address shall be used for school placement purposes, and the residence of the child shall not be moved out of Stark County, Ohio, without prior Court approval.
 {¶ 54} "9. The Defendant may take the child for an extended period of time up to 6 weeks in the winter, so long as the Plaintiff agrees and as long as the Defendant provides dates for said visitation at least 60 days in advance. Defendant must provide the address and the telephone number of where she can be reached during this extended period of visitation. This Additional visitation shall cease once the child becomes enrolled in school."
 {¶ 55} On October 24, 2005, appellant filed an objection to the Magistrate's October 12, 2005, decision, arguing that the Magistrate's decision barring appellant from presenting evidence was contrary to law. On November 3, 2005, appellant also filed an objection to the Magistrate's October 20, 2005 decision, arguing, in part, that the decision failed to consider all relevant evidence, that appellant was denied her ability to present evidence, and that the determination as to parental rights and responsibilities was not in the child's best interests. Pursuant to a Judgment Entry filed on January 9, 2006, the trial court approved and adopted the Magistrate's Decision.
 {¶ 56} Appellant now raises the following assignments of error on appeal:
 {¶ 57} "I: THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION TO DENY THE DEFENDANT HER RIGHT TO PRESENT EVIDENCE AS TO CUSTODY, IN VIOLATION OF R.C. 3109.04 AND THE BEST INTERESTS OF THE CHILD.
 {¶ 58} "II: THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION TO DENY THE DEFENDANT HER RIGHT TO PRESENT EVIDENCE BECAUSE THE DECISION IS INCONSISTENT WITH STATE AND LOCAL RULES OF CIVIL PROCEDURE."
 I, II {¶ 59} Appellant, in her two assignments of error, argues that the trial court erred in adopting the Magistrate's Decision and, in doing so, denying appellant her right to present evidence with respect to the issue of custody of Yoselin. We disagree.
 {¶ 60} In the case sub judice, a notice attached to appellee's complaint stated, in accordance with Loc. D.R. 13.01, in relevant part, as follows:
 {¶ 61} "If no answer is filed to this complaint . . ., this matter will be heard as an uncontested trial on the 7th day of June, 2005 . . ."
 {¶ 62} As is stated above, appellant never filed an answer in the case sub judice despite being granted leave to do so. D.R. Loc. 13.01[1] further provides that if there is no answer, motion, or stipulation for leave to plead within 28 days, then the divorce or legal separation is deemed uncontested. The Rule also provides if a case is set for hearing as an uncontested case, the defendant may not introduce evidence on his or her own behalf except by leave of court for good cause shown. Thus, the Magistrate properly limited appellant's ability to present evidence with respect to the issue of custody. We further note that the Magistrate, despite the fact that this was an uncontested divorce, did allow appellant to cross and recross appellant and to testify on direct.
 {¶ 63} Furthermore, appellant has failed to identify where in the record she attempted to proffer additional testimony regarding the issue of custody. It is incumbent upon the party seeking to introduce the evidence, who has been temporarily precluded from doing so, to offer the evidence at trial when the issue is actually reached during the trial by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve the record for appeal. Evid. R. 103(A)(2); State v. Grubb (1986),28 Ohio St.3d 199, 503 N.E.2d 142; State v. White (1982),6 Ohio App.3d 1, 451 N.E.2d 533. See Jones v. Capco, Cuyahoga App. No. CV-441168, 2003-Ohio-5807. Absent a proffer, a reviewing court has no way of determining if the excluded evidence prejudiced the appellant. Sulfridge v. Piatt (Dec. 26, 2001), Adams App. No. 00CA695, 2001 WL 1764391; See also In Re: Whaley (1993),86 Ohio App.3d 304, 620 N.E.2d 954. Accordingly, if no proffer is made, the party seeking to introduce the evidence in question waives the error on appeal. Frazier v. Ullom Realty, Inc. (Feb. 13, 1998), Lawrence App. No. 97CA19, 1998 WL 65776. As noted by appellee, "there is no proof that Appellant had any evidence or witnesses to present." As a result of appellant's failure to proffer, we find that appellant has waived her right to allege error in the trial court's determination of custody.
 {¶ 64} Appellant also argues that the trial court's actions amounted to the granting of a Civ.R. 55 default, which the court cannot grant in a domestic relations case, pursuant to Civ.R. 75(F). We note, however, that appellant never moved for a default judgment nor did the trial court grant a default judgment. Rather, as is stated above, the trial court treated the matter as an uncontested divorce pursuant to D.R. Loc. 13.01.[2]
Moreover, contrary to appellant's assertions, the trial court did not treat this matter as an ex parte trial. As is set forth above, appellant appeared at trial and testified and was, in fact, given the opportunity to cross-examine appellee.
 {¶ 65} Based on the foregoing, appellant's two assignments of error are overruled.
 {¶ 66} Accordingly, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.
By: Edwards, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed. Costs assessed to appellant.
[1] In Vance v. Roedersheimer, 64 Ohio St.3d 552,597 N.E.2d 153, 1992-Ohio-24, the Ohio Supreme Court found that Ohio Courts may adopt rules of local practice, but that any local rule is unenforceable to the extent that it is inconsistent with the Civil Rules. We note that appellant does not argue that D.R. Loc. 13.01 is inconsistent with the Civil Rules.
[2] As noted by the court in Williams v. Williams (Sept. 29, 2000), Ashtabula App. No. 99-A-0008. 2000 WL 1460030 at 4 "[a]lthough the final hearing may be uncontested, it is still a trial on the merits and evidence must be put on the record." On such basis, we find an uncontested trial is distinguishable from a default judgment. In the case sub judice, the trial court did not enter a default judgment, but considered the evidence presented and entered judgment based on such evidence. See, for example, Bianco v. Bianco (Aug. 27, 1999), Trumball App. No. 97-T-0226, 1999 WL 689941.